548 So.2d 1187 (1989)
Luis GUERRERO, M.D., Petitioner,
v.
HUMANA, INC., D/B/a Humana Hospital-Palm Beaches; Richard A. Berjian, D.O., and Eric J. Goldberg, M.D., Respondents.
No. 88-2181.
District Court of Appeal of Florida, Fourth District.
September 27, 1989.
Jack Scarola of Searcy, Denney, Scarola, Barnhart and Shipley, P.A., West Palm Beach, and Philip M. Burlington, of Edna L. Caruso, P.A., West Palm Beach, for petitioner.
Atlee W. Wampler III, of Wampler, Buchanan & Breen, Miami, for respondents.
William A. Bell of The Florida Hosp. Ass'n, for amicus curiae.
PER CURIAM.
Certiorari is denied.
LETTS and DELL, JJ., concur.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting.
Although the issue is a difficult one, and its resolution a close call, I believe the trial court erred in upholding the constitutionality of the bond requirement of section 768.40(6)(b), Florida Statutes. That statute requires a physician bringing an action against a member of a medical review board, to post a bond in an amount sufficient to cover the defendant's costs and attorney's fees, before the action can be prosecuted. The order on review requires the petitioner to post a bond of $150,000.00 before he may proceed with his civil action in Florida's courts.
In its order setting bond, the trial court acknowledged that "the bond restricts Dr. Guerrero's access [to the court]." The court reasoned, however, that the bond "does not abolish his right to sue and is reasonably related to the purpose of the legislation that is, to insure the availability of physicians to serve on peer review committees and the ability of health care providers to provide peer review." The court concluded that "the right restricted is not a fundamental right such as those involved in criminal proceedings and dissolutions of marriage." In my opinion, the trial court's rationale focused on the wrong "right." That is, the "right restricted" here is access to the courts, not the particular right to sue a medical review board. Under the Florida Constitution access to the courts is a fundamental right.
The right to go to court to resolve our disputes, rather than resorting to self-help or settling them in the streets, is one of the *1188 most fundamental and necessary rights of a citizen in a society based on the rule of law. Article 1, section 21 of the Florida Constitution provides a broad guarantee of access to the courts "to any person for redress of any injury" and provides that "justice shall be administered without sale, denial or delay." The provision does not expressly or impliedly restrict, nor has it been construed to limit that board guarantee to specific kinds of actions or types of relief. On the contrary, it, and its predecessor, Section 4, Declaration of Rights, of the Florida Constitution (1895), have been applied to dissolution cases,[1] interpretation of death penalty statutes,[2] automobile negligence cases,[3] foreclosure proceedings,[4] probate matters,[5] worker's compensation proceedings,[6] and many other kinds of disputes. Clearly, the intent of the access provision is to provide a broad guarantee of access regardless of the nature of the dispute. While the provision may not guarantee a litigant a particular remedy when the litigant is allegedly wronged, it does guarantee a litigant who has a recognized cause of action a forum in which to be heard.
The courts have consistently held that Article 1, section 21 sharply restricts the imposition of monetary preconditions to asserting claims in court. G.B.B. Investments Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977). While reasonable measures, like filing fees, have been upheld, monetary conditions that constitute a substantial burden on a litigant's right to have his case heard in court have been disfavored. In my view, the bond requirement violates that constitutional guarantee of access to the courts.
Unlike the pre-suit mediation procedure which was upheld in Carter v. Sparkman, 335 So.2d 802 (Fla. 1976) as reasonably related to the legislative goal of minimizing litigation by merit screening, the bond requirement contains no component to address the merits of a plaintiff's case before obligating him to post bond. All claimants must post bonds regardless of the merits of their claims. This kind of provision may net some sharks, but only at the price of also netting a substantial number of innocent fish. The real effect of the requirement is that plaintiffs unable to afford the bond are precluded from bringing suit. Thus, the economically disadvantaged will be deprived of access to the courts.
In effect, the statute creates a presumption that the claim is without merit and requires the claimant to provide for the defendant's fees and costs, up front. Of course, the actual entitlement to fees and costs cannot be determined until the merits of the case are decided. In addition, unlike the provisions in Sparkman, the bond requirement is not reciprocal, there being no provision for insuring the payment of claimant's fees and costs in the event that claimant's action proves to be meritorious. Even in Sparkman, the supreme court noted that the pre-litigation mediation requirement reached "the outer limits of constitutional tolerance." Id. at 806. If the merits-focused procedure involved in Sparkman was at the outer limits, surely the bond requirements involved herein have exceeded those limits.
Moreover, it should be noted that after it had upheld the mediation procedure in Carter v. Sparkman, the supreme court subsequently invalidated the procedure in Aldana v. Holub, 381 So.2d 231 (Fla. 1980), and held that "the medical mediation act [was] unconstitutional because the act in its operation ha[d] proven arbitrary and capricious." Id. at 235. Addressing the complaints by doctors deprived of the avenue of mediation due to congested court dockets and the inflexible 10-month mediation jurisdictional period, the court acknowledged *1189 that the statute "arbitrarily deprived these petitioners of the opportunity to correct fundamental unfairness in the mediation process [i.e., the inability to complete the mediation process within 10 months]." Id. at 236. The court further noted that, "it simply offends due process to countenance a law which confers a valuable legal right, but then permits that right to be capriciously swept away on the wings of luck and happenstance." Id. Without questioning the wisdom of its decision in Carter, the Aldana court concluded that "the medical mediation act is unconstitutional because the act in its operation has proven arbitrary and capricious." 381 So.2d at 235.
Applying the Aldana reasoning to the statutory provision at issue here, it would appear that the bond requirement is similarly arbitrary in its operation and effect. The financial resources of a plaintiff physician, and the complexity and resultant costs of defending the suit, may bear no rational relationship to the merits of a particular case. And, of course, the statute will encourage defendants to estimate their attorneys' costs at the highest possible level since the higher the bond, the greater the barrier to court action. Estimating future fees is much more difficult than determining the necessity and reasonableness of fees already incurred. Such estimates are inherently arbitrary.
The bond provision sharply contrasts with the now repealed statute providing for prevailing party attorney's fees in medical negligence cases. See section 768.56, Florida Statutes (1985) repealed by laws 1985 at 85-175, section 43. In upholding the constitutionality of that statute against a similar attack the Florida Supreme Court declared:
It can be argued that, rather than deterring plaintiffs from litigating, the statute could actually encourage plaintiffs to proceed with well-founded malpractice claims that would otherwise be ignored because they are not economically feasible under the contingent fee system. The statute may encourage an initiating party to consider carefully the likelihood of success before bringing an action, and similarly encourage a defendant to evaluate the same factor in determining how to proceed once an action is filed. We reject the argument that section 768.56 so deters the pursuit of medical malpractice claims that it effectively denies access to the courts to either party in malpractice actions.
Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1149 (Fla. 1985).
The supreme court, in Feldman v. Glucroft, 522 So.2d 798 (Fla. 1988), construed section 768.40, Florida Statutes (1983), to allow claims to be brought against participants in medical review boards, even though the legislature has restricted access to the boards' records. In other words, the court and the legislature have acknowledged that the rights of individuals who are wrongfully aggrieved by improper actions taken by such boards remain intact. But what good is such a right to an injured party who, regardless of the merits of her claim, must pay $150,000.00 to the gatekeeper before she can enter and participate in our system of justice? It is one thing to make it difficult to prove a particular cause of a action by restricting access to records, but quite another to limit access to the courts to resolve it.
NOTES
[1] McDuffie v. McDuffie, 155 Fla. 63, 19 So.2d 511 (1944).
[2] Wilson v. State, 225 So.2d 321 (Fla. 1969).
[3] Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969); Lasky v. State Farm Insurance Company, 296 So.2d 9 (Fla. 1974).
[4] Bridier v. Burns, 145 Fla. 642, 200 So. 355 (1941).
[5] In re Jeffries' Estate, 136 Fla. 410, 181 So. 833 (1938).
[6] Davis v. Artley Construction Co., 154 Fla. 481, 18 So.2d 255 (Fla. 1944).