610 So.2d 419 (1992)
PSYCHIATRIC ASSOCIATES, etc., et al., Appellants,
v.
Edward A. SIEGEL, M.D., Appellee.
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, INC., Appellant,
v.
Armanda M. SITTIG, M.D., Appellee.
Nos. 76844, 76917.
Supreme Court of Florida.
December 3, 1992.
*420 Richard Smoak of Sale, Smoak, Harrison, Sale, McCloy & Thompson, Panama City, for Psychiatric Associates.
John D. Buchanan, Jr., Laura Beth Faragasso and Diane Wagner Carr of Henry, Buchanan, Mick & English, P.A., Tallahassee, for Tallahassee Memorial Regional Medical Center, Inc.
Daniel M. Soloway of McKenzie & Soloway, P.A., Pensacola, for Edward A. Siegel, M.D.
Donna H. Stinson of Moyle, Flanigan, Katz, FitzGerald & Sheehan, P.A., Tallahassee, for Armanda M. Sittig, M.D.
Thomas M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, amicus curiae for Academy of Florida Trial Lawyers.
Larry Corman of Hodgson, Russ, Andrews, Woods & Goodyear, Boca Raton, and Philip M. Burlington of Edna L. Caruso, P.A., West Palm Beach, amicus curiae for American Civil Liberties Union Foundation of Florida, Inc.
William A. Bell, Gen. Counsel, Tallahassee, and John E. Thrasher, General Counsel, Jacksonville, amicus curiae for Florida Hosp. Ass'n, Inc. and Florida Medical Ass'n, Inc.
HARDING, Justice.
We have for appellate review Psychiatric Associates v. Siegel, 567 So.2d 52 (Fla. 1st DCA 1990), and Sittig v. Tallahassee Memorial Regional Medical Center, Inc., 567 So.2d 486 (Fla. 1st DCA 1990), in which the First District Court of Appeal invalidated sections 395.011(10)(b)[1], 395.0115(5)(b)[2], *421 Florida Statutes (1987), and 766.101(6)(b)[3], Florida Statutes (Supp. 1988). We have jurisdiction pursuant to article V, section 3(b)(1), of the Florida Constitution, and consolidate the two cases for purposes of this opinion.
The issue before the Court is whether sections 395.011(10)(b), 395.0115(5)(b), and 766.101(6)(b), which require a plaintiff bringing an action against someone who participated in a medical review board process to post a bond sufficient to cover the defendant's costs and attorney's fees, before the action can be prosecuted, violate the plaintiff's right of access to the courts.[4] We hold that sections 395.011(10)(b), 395.0115(5)(b) and 766.101(6)(b) are unconstitutional because the bond requirement: 1) infringes on the plaintiff's fundamental right of access to the courts without providing an alternative remedy, commensurate benefit or a showing that no alternative method exists for meeting the medical malpractice crisis; and 2) infringes on the plaintiff's due process rights by not being reasonably related to the legislative goal of preventing frivolous lawsuits filed for intimidation or leverage as well as being arbitrary and capricious in application.
Psychiatric Associates is a professional service corporation that is operated by three psychiatrists, Doctors Gill, Neumeyer, and Valentine, who practice at Health Care Services of America Gulf Coast Hospital (Gulf Coast Hospital), a private psychiatric hospital in Okaloosa County. Gill, Neumeyer and Valentine are also members of Gulf Coast Hospital's executive committee, which is in charge of conducting peer review, quality assurance, and regulation of the hospital's medical staff privileges.
In early 1986, Dr. Siegel (Siegel), a psychiatrist, entered into a written employment contract with Gulf Coast Hospital to practice psychiatry at the hospital. By June 1986, Gulf Coast Hospital's corporate owner received reports from staff members, including Valentine, indicating that Siegel may have become an impaired physician. Consequently, Gulf Coast Hospital's corporate medical director instructed Valentine, who was serving as acting chairman of the executive committee and president of the medical staff in Neumeyer's absence, to summarily place Siegel on temporary suspension. Gulf Coast Hospital subsequently required Siegel to undergo evaluation at an impaired physician's clinic. Siegel underwent the evaluation, and the clinic certified that he was not an impaired physician. Upon receiving the clinic's report, Gulf Coast Hospital reinstated Siegel's staff privileges on the conditions that he consult weekly with the hospital's medical director about patient care and submit monthly reports of these consultations to the corporate medical director.
Shortly after his reinstatement, Siegel left his employment at the hospital. On March 4, 1988, he sued Psychiatric Associates alleging that they wrongfully interfered with his contract of employment with *422 the hospital, and that Psychiatric Associates intentionally inflicted emotional distress upon him. Following a year of pretrial discovery, Psychiatric Associates moved for a summary judgment claiming that Siegel's claim against them arose out of their executive committee responsibilities for quality assurance, peer review and regulation of physician staff privileges. Thus, Psychiatric Associates argued that sections 395.011, 395.0115, and 766.101 provided them statutory immunity. The trial court denied the summary judgment motion. Psychiatric Associates then filed a motion to require Siegel to post a bond for attorney's fees and costs as required by sections 395.011(10)(b) and 766.101(6)(b). The trial court denied the motion as to attorney's fees on the basis that the bond requirement violated Siegel's right of access to courts under article I, section 21, of the Florida Constitution. The trial court, however, granted Psychiatric Associates' motion requiring Siegel to post a bond in order to cover the defendant's costs. Psychiatric Associates appealed the trial court's holding that the bond requirement violated Siegel's right of access. The district court affirmed the trial court's holding and adopted Judge Anstead's dissent in Guerrero v. Humana, Inc., 548 So.2d 1187 (Fla. 4th DCA 1989).
In Sittig v. Tallahassee Memorial Regional Medical Center, the district court held that section 395.0115(5)(b), as applied to the facts, violated Dr. Armanda Sittig's (Sittig) right of access to courts. The record shows that in June 1982, Tallahassee Memorial Regional Medical Center (Tallahassee Memorial) hired Sittig to practice obstetrics and gynecology. According to Tallahassee Memorial's bylaws, the hospital's executive committee periodically reviewed Sittig's performance and made recommendations concerning the renewal of her staff privileges. During the summer of 1987, upon recommendation of Tallahassee Memorial's executive committee, the hospital revoked Sittig's obstetrical staff privileges, but left intact her gynecological staff privileges. Sittig filed an initial complaint in July 1987, which the trial court dismissed without prejudice on September 14, 1987. Sittig filed an amended complaint on October 23, 1987, which contained five counts: malicious and willful breach of contract; a violation of the statutory mandates regarding staff privileges found in section 395.0115; tortious interference with Sittig's business relationship with private birth establishments; and two counts of maliciously harming Sittig's reputation in the community and her ability to practice medicine.
Pursuant to section 395.0115(5)(b), Tallahassee Memorial filed a motion requesting that Sittig post a bond or other security in an amount sufficient to pay the hospital's costs and attorney's fees in the eventuality that Tallahassee Memorial prevailed in the action. The trial court held a hearing on the constitutionality of the bond requirement and determined that section 395.0115(5)(b) did not violate Sittig's right of access to the courts. Following its determination, the trial court conducted an evidentiary hearing to determine the amount of bond. During the evidentiary hearing, the trial court examined Sittig's affidavit claiming an inability to post the bond, her 1986 and 1987 tax returns, testimony about her financial situation, and a lawyer's affidavit regarding the defendant's potential costs and attorney's fees in defending this case. On October 21, 1988, the trial court issued an order staying Sittig's action until she posted a $30,000 bond.
The record shows that no activity took place in the case for over a year. On October 27, 1989, Tallahassee Memorial filed a motion to dismiss for failure to prosecute. In response to the motion to dismiss, Sittig filed a pleading which alleged that her continued inability to post the bond provided good cause for lack of prosecution. On December 4, 1989, the trial court rejected Sittig's pleading and ordered the case dismissed.
Sittig appealed the trial court's dismissal to the district court. The district court did not address the issue of the trial court's dismissal, but rather reversed on the grounds that section 395.0115(5)(b) as applied in the case violated Sittig's right of access to the courts.
*423 Sections 395.011(10)(b), 395.0115(5)(b), and 766.101(6)(b) share common language which requires a plaintiff to post "a bond or other security ... in an amount sufficient to pay the costs and attorney's fees" before any responsive pleading is due. § 395.011(10)(b), Fla. Stat. (1987). This bond requirement creates a financial precondition before a claimant may bring an action against a person who participated in a medical review board proceeding. The legislature enacted the bond requirement pursuant to recommendations made by the Governor's Task Force on Medical Malpractice (Task Force), which was formed to study the growing medical malpractice crisis in the state.[5] In 1985, the Task Force issued a report titled Toward Prevention and Early Resolution which found the existence of a medical malpractice crisis, and made a number of findings concerning the causes of the malpractice crisis and some possible problem-solving recommendations.
The Task Force suggested that hospitals appoint medical staffs to review the performance and competence of staff physicians. In order to encourage candid review and protect physicians participating in the peer review process, the Task Force recommended that:
A person who files a civil action seeking damages against a peer review participant shall be required to post a bond sufficient to pay cost and attorneys' fees in the event that the plaintiff is unsuccessful.
... The requirement to post a bond is designed to act as a deterrent to filing a civil action only as a means to leverage or intimidate peer review participants.
"Toward Prevention and Early Resolution" 75 (Governor's Task Force on Medical Malpractice ed., 1985) (on file in the Florida Legislative Library, The Capitol).
The appellants, Psychiatric Associates and Tallahassee Memorial, argue that the district court of appeal erred in holding that the bond requirement violated the appellees' right of access to the courts. The appellants argue that the bond requirement is part of the legislature's comprehensive plan to end Florida's medical malpractice crisis. They contend that the legislature carefully created a reasonable financial barrier for a plaintiff to meet before bringing a law suit against a person who participated in a medical review board. Consequently, the appellants argue that the bond requirement does not abolish a plaintiff's cause of action. The appellants conclude that because the bond requirement reasonably furthers the legislative purpose of encouraging peer review on medical boards without abolishing the plaintiff's cause of action, the bond requirement is constitutional. The appellants also argue that even if this Court finds that the bond requirement abolishes the appellees' right of access to the courts, the bond requirement satisfies the two-prong test set out by Kluger v. White, 281 So.2d 1 (Fla. 1973), because the bond is pursuant to the "overpowering public necessity" of ending the medical malpractice crisis and that "no alternative method of meeting such public necessity can be shown." Id. at 4.
The appellees, Siegel and Sittig, argue that the bond requirement is unconstitutional because it has the practical effect of abolishing their right of access to the courts, based upon their inability to post the bond and the lack of any provision to retain their common-law cause of action. They conclude that the statutes fail both prongs of Kluger because the bond requirement is not part of an "overpowering public necessity" and the legislature failed to show that "no alternative method" exists for reaching its goal. The appellees argue that even if this Court found that the bond requirement does not abolish a cause of action, the statutes are unconstitutional because the bond is not rationally related to the goal of the legislature. Finally, the appellees argue that the bond requirement violates due process because it is arbitrary and capricious in its application.
We find that the bond requirement does not totally abrogate a plaintiff's right of access to the courts; however, the statutes *424 do create an impermissible restriction on access to the courts. The constitutional right of access to the courts sharply restricts the imposition of financial barriers to asserting claims or defenses in court. G.B.B. Investments, Inc. v. Hinterkopf, 343 So.2d 899, 901 (Fla. 3d DCA 1977). Although courts have upheld reasonable measures, such as filing fees, financial preconditions that constitute a substantial burden on a litigant's right to have his or her case heard are disfavored. Id.
Article I, section 21 of the Florida Constitution expressly provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay." The right to go to court to resolve our disputes is one of our fundamental rights. With the exception of the state constitution in 1868, Florida has incorporated an express provision guaranteeing a person's right of access to the courts in each of its constitutions.[6] The history of the provision shows the courts' intention to construe the right liberally in order to guarantee broad accessibility to the courts for resolving disputes. As Judge Anstead noted in Guerrero, article I, section 21 and its predecessor, Section 4, Declaration of Rights of the Florida Constitution (1885), have been applied to "dissolution cases, interpretation of death penalty statutes, automobile negligence cases, foreclosure proceedings, probate matters, worker's compensation proceedings, and many other kinds of disputes." Guerrero, 548 So.2d at 1188 (Anstead, J., dissenting) (footnotes omitted). While article I, section 21 may not give a litigant a particular remedy, the right of access does guarantee the litigant a forum in which to be heard. Although courts generally oppose any burden being placed on the right of a person to seek redress of injuries from the courts, the legislature may abrogate or restrict a person's access to the courts if it provides: 1) a reasonable alternative remedy or commensurate benefit, or 2) a showing of an overpowering public necessity for the abolishment of the right, and finds that there is no alternative method of meeting such public necessity. Kluger, 281 So.2d at 4; see also Smith v. Department of Ins., 507 So.2d 1080, 1088 (Fla. 1987).
In Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974), we upheld a statutory provision which denied recovery for pain and suffering and similar intangible items of damages unless the plaintiff was able to meet a $1,000 medical expense threshold. In upholding the statute, we found that the legislature had provided plaintiffs an alternative remedy or commensurate benefit. As this Court explained in Smith, the statute at issue in Lasky "provided a reasonable trade off of the right to sue for the right to recover uncontested benefits under the statutory no-fault insurance scheme and the right not to be sued." Smith, 507 So.2d at 1088. Unlike Lasky, we find that the bond requirement statutes at issue here do not provide a plaintiff with an alternative remedy or a commensurate benefit. Under the statutes, a plaintiff is only heard after posting a bond, and the plaintiff receives no benefit from posting the bond. In fact, the statutes lack reciprocity because they do not require defendants to pay a plaintiff's costs and attorney's fees if the claim proves meritorious. Thus, for the bond requirements to be constitutional under the right of access to the courts the statutes must pass the two-prong test set out in Kluger.
The record shows that the legislature enacted the bond requirement statutes pursuant to an overpowering public purpose. The Task Force's report and the legislature's preamble[7] to enacting the bond requirements clearly outline the existence of a medical malpractice crisis in the state. The legislature acted within its police powers to protect the health and welfare of its citizens by enactment of the statutes. Thus, we find that the bond requirement statute passes the first prong of Kluger. However, the bond requirement statutes do not satisfy Kluger's second prong because *425 the record in the case does not show that the bond requirement is the only method of meeting the medical malpractice crisis and encouraging peer review. Consequently, we hold that the statutes are an unconstitutional restriction on a plaintiff's right of access to the courts.
The bond requirement also raises due process issues. In Lasky, we stated that "[t]he test to be used in determining whether an act is violative of the due process clause is whether the statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary, or oppressive." Lasky, 296 So.2d at 15.
Applying Lasky to the bond requirement statutes, we find that the statutes are not reasonably related to the legislature's objective of preventing disgruntled physicians from filing frivolous lawsuits against members of medical review boards for the purposes of intimidation or leverage. Under the bond requirement statutes, all plaintiffs, regardless of the merits of their claims, must post a bond before proceeding with their action. This requirement will not necessarily discourage frivolous lawsuits of the rich, but only those lawsuits where the plaintiff is too poor to post the bond. Thus, the effect of the bond requirement is to discourage lawsuits based on the plaintiff's financial ability rather the merits of the claim. Further, under the bond requirement, a plaintiff with a complex meritorious case would have to post a larger bond than a plaintiff with a simple but frivolous case. Thus, as Judge Anstead stated, "[t]his kind of provision may net some sharks, but only at the price of also netting a substantial number of innocent fish." Guerrero, 548 So.2d at 1188 (Anstead, J. dissenting). We find that this result is not reasonably related to the permissible legislative goal of preventing frivolous lawsuits filed for intimidation or leverage.
These bond requirement statutes are distinguishable from the pre-suit mediation statute at issue in Carter v. Sparkman, 335 So.2d 802 (Fla. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). In Carter, we found that a statute requiring a plaintiff to submit his or her medical malpractice claim to an appropriate medical mediation panel before filing the claim in the state courts did not violate due process. Unlike the pre-suit mediation procedure upheld in Carter, these bond requirement statutes contain no provision to address the merits of a plaintiff's claim before requiring him or her to post a bond. We agree with Judge Anstead that if the merits-focused pre-suit mediation process approved in Carter reached the outer limits of constitutional tolerance, then the bond requirement in the instant case exceeds those limits. Guerrero 548 So.2d at 1188 (Anstead, J., dissenting).
As noted earlier, the bond requirement is also unreasonable because the statutes lack reciprocity which encourages defendants to dispute all claims instead of settling meritorious plaintiffs' claims. In fact, the bond requirement may have the unwanted effect of encouraging defendants to estimate costly defenses for all claims in order to obtain a prohibitively high bond. Furthermore, the bond requirement statutes are distinguishable from statutes that award a prevailing party reasonable attorney's fees at the conclusion of a case. Under these latter statutes, the court can accurately measure the reasonableness of the fees; whereas the bond requirement statutes compel the court to intuit the appropriate attorney's fees and costs in advance of any action. For all of the reasons discussed above, we find the bond requirement is an unreasonable means to reach the legislative goal of preventing frivolous lawsuits.
Even if we accepted the view that the bond requirement is reasonably related to a permissible legislative objective, the bond requirement would violate due process because it is arbitrary and capricious. The bond requirement arbitrarily cuts off a plaintiff's right to be heard solely because of inability to post a bond. Unlike other financial barriers to the courts, such as filing fees and bonds covering costs, the bond requirement statutes contain no provisions for a trial court to weigh a plaintiff's ability to post the bond or to waive the *426 bond if the plaintiff is unable to pay. Thus, these bond requirements are arbitrary and capricious because they deny plaintiffs, like Sittig, the right to be heard on the basis of one's financial status.
Tallahassee Memorial Regional Medical Center v. Sittig contains an additional issue that the district court did not address: whether the trial court abused its discretion in granting Tallahassee Memorial's motion to dismiss Sittig's claim for failure to prosecute.
Tallahassee Memorial argues that the district court erred in not determining whether the trial court abused its discretion. Although Tallahassee Memorial concedes that Florida Rule of Civil Procedure 1.420(e) generally precludes dismissal of an action where a stay order has been issued, Tallahassee Memorial argues that the stay order in the instant case is distinguishable from stay orders granted in other actions. Tallahassee Memorial contends that most stay orders are entered to stop a proceeding in one case until there has been a resolution of a collateral issue in another case; whereas the stay order in the instant case was not entered subject to the resolution of another action or a collateral issue. Thus, Tallahassee Memorial concludes that because Sittig failed to move the trial court for rehearing on the bond or to pursue an interlocutory appeal to move the case to a conclusion, the trial court properly dismissed the case for lack of prosecution.
"The purpose of Rule 1.420(e) is to encourage prompt and efficient prosecution of cases and to clear trial dockets of litigation that essentially has been abandoned." Barnett Bank v. Fleming, 508 So.2d 718, 720 (Fla. 1987). While we agree with Tallahassee Memorial that the stay order in the instant case may be distinguishable from stay orders contemplated by rule 1.420(e), we cannot ignore the fact that the trial court issued a stay order as a result of Tallahassee Memorial's request for the bond.
As Rule of Judicial Administration 2.085 states, "[j]udges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so." Fla.R.Jud.Admin. 2.085(a) (emphasis added). The better practice here would have been for Sittig to pursue her case's prosecution to a conclusion, either by requesting a rehearing or seeking appellate review of the trial court's stay order. However, in light of our decision holding that the bond requirement is unconstitutional, we find that dismissal of Sittig's action was inappropriate.
Accordingly, we hold that sections 395.011(10)(b), 395.0115(5)(b), and 766.101(6)(b) violate the appellees' right of access to the courts and right to due process, and affirm the decisions below.
It is so ordered.
SHAW and KOGAN, JJ., concur.
BARKETT, C.J., concurs with an opinion.
GRIMES, J., concurs in result only with an opinion.
OVERTON, J., dissents with an opinion.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
BARKETT, Chief Justice, concurring.
I write only to add that the statutes also violate the equal protection guarantees of the Florida and federal Constitutions. There can be no equal justice when the right to file suit depends on one's ability to pay. Cf. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (a criminal defendant's right to appeal cannot be denied because the defendant does not have the money to pay for a transcript).
GRIMES, Justice, concurring in result only.
I believe the statutes would be constitutional if they contained a provision that would authorize the court to reduce the amount of the bond to accommodate the financial capability of the plaintiff.
OVERTON, Justice, dissenting.
I dissent. By its decision, the majority has driven a large nail in the coffin of the Comprehensive Medical Malpractice Reform *427 Act of 1985.[8] Individual physicians will not volunteer their time and expertise in the difficult and sensitive peer review process if their personal assets are threatened by their participation in that process. Studies have established that meaningful peer review is absolutely necessary to reduce patient injuries caused by negligence and to improve the quality of medical care. Those objectives will suffer a severe blow as a result of this opinion. I fully concur with Justice McDonald's articulate and well-reasoned dissent.
McDONALD, Justice, dissenting.
I disagree that the legislation under review is an unconstitutional bar to access to courts or is otherwise invalid. This legislation was passed after a long and detailed study by the Governor's Task Force on Medical Malpractice and was an integral part of chapter 85-175, Laws of Florida, generally described as the Comprehensive Medical Malpractice Reform Act of 1985. The requirement to post a bond is admittedly an impediment to actions sought to be brought against persons serving as peer review committee members. The task force, however, stated succinct and logical reasons for the enactment:
The hospital has an affirmative duty to ensure that only competent physicians are appointed to its medical staff, that those admitted are given clinical privileges according to their qualifications, and that staff physicians are evaluated periodically to ensure their continuing competence.
The state should encourage peer review and reduce the risks associated with it. Physicians currently feel vulnerable to suit if they candidly participate in peer review activities. This has acted as a deterrent to strong peer review among providers.
When a physician is removed from the hospital staff or is otherwise disciplined in a peer review situation, he will sometimes bring a suit against the physicians on the peer review committee. The suit is usually based on a myriad of complaints. They include restraint of trade, a lack of due process, defamation, violation of civil rights, and so forth.
When the individual physician sitting on a peer review panel is sued and personal assets are then threatened, it results in physicians being unwilling to participate further in these activities. Few mechanisms are in place to protect the physician who participates in peer review from these types of suits.
If incentives could be provided to encourage meaningful peer review participation, the inept provider could have his practice restrained to areas of competence. This should result in a reduction on the number of patient injuries caused by negligence. The overall quality of care would be improved and public confidence about the quality and competence of practitioners would be enhanced.
"Toward Prevention and Early Resolution" 63-64 (Governor's Task Force on Medical Malpractice ed., 1985). As a result of its findings, and in an effort to encourage meaningful peer review and, in turn, raise the level of physician competence in this state, thereby raising the quality of care rendered to the general public, the task force made the following recommendation:
A person who files a civil action seeking damages against a peer review participant shall be required to post a bond sufficient to pay costs and attorney's fees in the event that the plaintiff is unsuccessful... The requirement to post a bond is designed to act as a deterrent to filing a civil action only as a means to leverage or intimidate peer review participants.
Id. at 75. Based upon the recommendation of the task force and its preliminary determination that the health and public welfare of the citizens of this state would benefit from such legislation, the legislature enacted the bond requirement of subsection 395.0115(5), Florida Statutes (1987). There are valid public policy reasons for this that meet the test of Kluger v. White, 281 So.2d 1 (Fla. 1973).
*428 In order to induce competent physicians to perform peer review functions, reasonable protection should be afforded to them. Otherwise, the weapon of a lawsuit may force them, out of self protection, into taking actions that their professional judgment would dictate being done differently.
I dissent.
OVERTON, J., concurs.
NOTES
[1] Section 395.011(10)(b), Florida Statutes (1987), reads as follows:

As a condition of any applicant bringing any action against any person or entity that initiated, participated in, was a witness in, or conducted any review as authorized by this section and before any responsive pleading is due, the applicant shall post a bond or other security, as set by the court having jurisdiction of the action, in an amount sufficient to pay the costs and attorney's fees.
[2] The legislature amended sections 395.0115(5)(a) and (b) to include protection for physicians, and renumbered the amended sections to 395.0115(8)(a) and (b). Ch. 88-1, § 3, Laws of Fla. Section 395.0115(5)(b), Florida Statutes (1987), reads as follows:

As a condition of any staff member bringing any action against any person or entity that initiated, participated in, was a witness in, or conducted any review as authorized by this section and before any responsive pleading is due, the staff member shall post a bond or other security, as set by the court having jurisdiction of the action, in an amount sufficient to pay the costs and attorney's fees.
[3] Section 766.101(6)(b), Florida Statutes (Supp. 1988), reads as follows:

As a condition of any health care provider bringing any action against any person that initiated, participated in, was a witness in, or conducted any review as authorized by this section and before any responsive pleading is due, the health care provider shall post a bond or other security, as set by the court having jurisdiction of the action, in an amount sufficient to pay the costs and attorney's fees.
[4] Art. I, § 21, Fla. Const.
[5] Fla.Exec.Order No. 84-202 (Apr. 1984).
[6] David C. Hawkins, Florida Constitutional Law: A Ten-Year Retrospective on the State Bill of Rights, 14 Nova L.Rev. 693, 807 (1990).
[7] Ch. 85-175, § 3, Laws of Fla.
[8] Ch. 85-175, Laws of Fla.