52 So.3d 699 (2010)
Moses ACHORD, et al., Petitioners,
v.
OSCEOLA FARMS CO., Respondent.
No. 4D09-1906.
District Court of Appeal of Florida, Fourth District.
September 1, 2010.
*700 David L. Gorman of David L. Gorman, P.A., North Palm Beach, James K. Green, West Palm Beach, and Gregory S. Schell, Lake Worth, for petitioners.
Joseph P. Klock, Jr., and Juan Carlos Antorcha of Rasco Klock Reininger Perez Esquenazi Vigil & Nieto, Coral Gables, William B. Killian and Robert C.L. Vaughan of Squire, Sanders & Dempsey L.L.P., Miami, for respondent.
Monica Ramirez, Atlanta, GA, for Amicus Curiae Southern Poverty Law Center.
Tamela Ivey Perdue, Tallahassee, for Amicus Curiae Associated Industries of Florida.
Randall C. Marshall, Miami, for Amicus Curiae ACLU Foundation of Florida, Inc.
Adedayo Ademola Banwo of Simpson Thacher & Bartlett, LLP, New York, NY, for Amicus Curiae Interested Legal Scholars.
WARNER, J.
Petitioners seek second-tier certiorari review of a decision of the circuit court sitting in its appellate capacity affirming a county court's order dismissing approximately 1500 non-resident plaintiffs from a county court suit, because none of the plaintiffs posted the $100 bond for defense costs in accordance with section 57.011, Florida Statutes. We deny the petition as we conclude that we do not have jurisdiction under these facts.
The underlying dispute involves a breach of contract action filed by more than 1500 sugar cane cutters from Jamaica seeking back wages from Osceola Farms for work performed over twenty years ago. Plaintiffs' counsel actually filed two cases raising identical claims, one with one named plaintiff (Lennon) and the other with more than 1500 plaintiffs (Achord). The complaints allege that Osceola employed various schemes and illegal practices to avoid paying the guest workers wages due under their written contracts and required by federal law.
This is not the first time that these claims have reached our court. A general description of the facts surrounding a similar claim of foreign workers against another sugar cane harvesting company is found in a prior opinion of our court. See Okeelanta Corp. v. Bygrave, 660 So.2d 743 (Fla. 4th DCA 1995). The first claims by foreign workers against sugar companies associated with respondent were filed in 1989. During the ensuing twenty-year period, the plaintiffs have filed class actions in state and in federal court. The federal court action was dismissed. Several individual claims were prosecuted through jury trials, all being resolved against the claims of the foreign workers. See, e.g., Williams v. Atl. Sugar Ass'n, 773 So.2d 1176 (Fla. 4th DCA 2000); Gordon v. Okeelanta Corp., 784 So.2d 537 (Fla. 4th DCA 2001); Bygrave v. Sugar Cane Growers Coop., 898 So.2d 945 (Fla. 4th DCA 2005).
A class action was filed on these issues against respondent but languished for several *701 years until 2005 when the trial court eventually granted respondent's motion to decertify the class because of an inadequate class representative as well as failure to abide by several court rulings. The court, however, permitted each individual member of the class the right to file his own suit against respondent Osceola, which 1500 individual workers did by filing one action naming all of them as plaintiffs in county court.
In 2007 Osceola served a notice for the cutters to post the $100 non-resident bond required by section 57.011, Florida Statutes.[1]
Section 57.011 states:
When a nonresident plaintiff begins an action or when a plaintiff after beginning an action removes himself or herself or his or her effects from the state, he or she shall file a bond with surety to be approved by the clerk of $100, conditioned to pay all costs which may be adjudged against him or her in said action in the court in which the action is brought. On failure to file such bond within 30 days after such commencement or such removal, the defendant may, after 20 days' notice to plaintiff (during which the plaintiff may file such bond), move to dismiss the action or may hold the attorney bringing or prosecuting the action liable for said costs and if they are adjudged against plaintiff, an execution shall issue against said attorney.
After noncompliance, Osceola moved to dismiss the complaint for several reasons, including the failure to post the bond for each of the plaintiffs. The cane cutters responded that eighty-eight of the plaintiffs are now residents of Florida and not required to post the bond. Osceola moved to dismiss the complaint as to the remaining plaintiffs.
Fifty-nine plaintiffs in Jamaica filed declarations of their financial status with affidavits showing their indigent status and noting that the $100 bond for costs would exceed their monthly Jamaican wages in many cases. At the hearing on Osceola's motion, petitioners argued that because they were indigent, the posting requirement would unconstitutionally constitute a deprivation of access to the courts. Based upon the arguments presented, the trial court held that the statute was constitutional and ordered the non-resident plaintiffs to deposit the required bond or face dismissal of their complaint. When the required deposits were not made, the court dismissed the non-resident plaintiffs.
The plaintiffs appealed to the circuit court, arguing that the non-resident bond statute is unconstitutional because it violates the open courts clause of the Florida Constitution.[2] They argued the statute significantly obstructs their access to the courts, and the statute fails to provide any alternative means of access for indigents.
Osceola argued that the cane cutters have had more than 18 years of litigation in the state and federal court systems; the cost bond is constitutional and it is the only way to protect against frivolous actions *702 by non-residents; and plaintiffs' counsel could have posted the bond.
The circuit court affirmed the county court dismissal without opinion. Judge Cox dissented, concluding that the statute was unconstitutional. With no majority opinion, the decision cannot act as precedent for future proceedings. See Dep't of Legal Affairs v. Dist. Court of Appeal, 5th Dist., 434 So.2d 310 (Fla.1983). Plaintiffs then filed their petition for second-tier review with this court.
Certiorari review from an appellate decision of the circuit court is limited to instances where the circuit court did not afford procedural due process or departed from the essential requirements of law. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003) ("A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.") (emphasis in original); Ivey v. Allstate Ins. Co., 774 So.2d 679 (Fla.2000); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995) (in reviewing a petition for certiorari district courts of appeal should be primarily concerned with seriousness of error, not mere existence of error; a departure from the essential requirements of law is more than a legal error, it is an act that results in a gross miscarriage of justice). A departure from the essential requirements of law is synonymous with the failure to apply the correct law. See State v. Belvin, 986 So.2d 516, 525 (Fla.2008) (quoting Belvin v. State, 922 So.2d 1046, 1048 (Fla. 4th DCA 2006)). As a practical matter, the circuit court's final ruling is generally conclusive because second-tier review is extraordinarily limited. See City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982); Seminole Entm't, Inc. v. City of Casselberry, 813 So.2d 186 (Fla. 5th DCA 2002) (explaining that second-tier certiorari review is extremely narrow).
Here, there is no question that the circuit court afforded procedural due process. The issue raised is whether the circuit court departed from clearly established law resulting in a gross miscarriage of justice. We cannot say that the standard has been met.
Section 57.011 was first enacted in 1828, well before the enactment of even the earliest Florida constitution containing a provision for access to the courts. Art. I, § 9, Fla. Const. (1838).[3] The practical reason for such a statute is to obtain security for a suit being prosecuted by a nonresident plaintiff. See Thompson v. Grosslaub, 109 Fla. 550, 147 So. 861 (1933). In 170 years the statute appears never to have been challenged as unconstitutional on any ground. This alone provides reason to determine that the circuit court did not depart from clearly established precedent, because the law has never been construed. See e.g., Stilson v. Allstate Ins. Co., 692 So.2d 979 (Fla. 2d DCA 1997) (stating that without any controlling precedent, the district court could not conclude that the county or circuit court violated a clearly established principle of law and at most the courts simply misapplied the correct law). Moreover, Article XII, Section 6, Florida Constitution, provides that all laws in effect upon the adoption of the 1968 constitution, to the extent not inconsistent with it, shall be preserved. Section 57.011 has been applied for the past forty years without ever being found inconsistent *703 with the provisions of the 1968 constitution.
The petitioners, however, argue that the precedent with respect to access to the courts is clear and that financial barriers cannot stand in the way of individual access under Article I, Section 21, of the Florida Constitution. Particularly, they rely on Psychiatric Associates v. Siegel, 610 So.2d 419, 424-25 (Fla.1992), receded from on other grounds in Agency for Health Care Administration v. Associated Industries of Florida, Inc., 678 So.2d 1239 (Fla.1996).
In Psychiatric Associates our supreme court held that a bond statute, adopted as part of reforms in a perceived medical malpractice crisis, unconstitutionally interfered with a plaintiff's access to the courts. The statute required a staff member or healthcare provider suing anyone participating in medical review board proceedings to post a bond sufficient to pay the defendant's costs and attorney's fees. The bond in question in the case amounted to $30,000. The court found that the statutes created an impermissible restriction on access to the courts, explaining:
The constitutional right of access to the courts sharply restricts the imposition of financial barriers to asserting claims or defenses in court. Although courts have upheld reasonable measures, such as filing fees, financial preconditions that constitute a substantial burden on a litigant's right to have his or her case heard are disfavored.
Id. at 424 (emphasis supplied) (citation omitted). Thus, the amount of the bond affected the court's decision in Psychiatric Associates.
Psychiatric Associates restated the test articulated in Kluger v. White, 281 So.2d 1 (Fla.1973), for analyzing restrictions on access to courts:
Although courts generally oppose any burden being placed on the right of a person to seek redress of injuries from the courts, the legislature may abrogate or restrict a person's access to the courts if it provides: 1) a reasonable alternative remedy or commensurate benefit, or 2) a showing of an overpowering public necessity for the abolishment of the right, and finds that there is no alternative method of meeting such public necessity.
Psychiatric Associates, 610 So.2d at 424 (emphasis in original). In that case the court found that the Legislature had not provided a reasonable alternative remedy, nor conferred on the plaintiff a commensurate benefit. Moreover, the Legislature had not shown such an overpowering public necessity for the severe restriction on the right of access caused by the requirement of filing a substantial bond likely to prevent plaintiffs from bringing such suits.
Unlike the bond requirement in Psychiatric Associates and most other cost bond provisions, the $100 cost bond under section 57.011 is what we would term minimal. It is only a nominal payment compared to the cost of litigating a lawsuit, including the potential costs to a non-resident of bringing a cause of action in this state. Indeed, it will cost a non-resident plaintiff well in excess of $100 in almost all cases simply to travel to the state to attend any necessary proceedings involving the litigation.
In Smith v. Department of Health and Rehabilitative Services, 573 So.2d 320, 324 (Fla.1991), the court held that the access to courts provision did not require the state to provide a transcript of proceedings to an indigent person appealing an administrative proceeding. The court said:
[W]e believe that article I, section 21, is inapplicable to these cases. That clause of our constitution is typically applied to *704 guarantee every person the right of access to the courts for claims of redress of injury free of unreasonable burdens and restrictions. Smith v. Department of Ins., 507 So.2d 1080 (Fla.1987) (holding invalid statute placing cap on the recovery of noneconomic damages in personal injury cases); G.B.B. Invs., Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977) (striking down requirement that mortgagor in foreclosure suit pay into court registry all mortgage payments plus delinquent interest and taxes as precondition for maintaining a counterclaim against the mortgagee). Here, there would be no denial of access to the courts by persons having claims such as petitioners because the right of appeal to a judicial tribunal is provided by section 120.68, Florida Statutes (1985). There is no suggestion that the filing fees or other costs incident to such judicial review are unreasonable as related to the general class of persons who may seek such review.

(Emphasis supplied).
Our supreme court has held that the small cost of publication in a newspaper to secure service of process in an adoption proceeding required by statute for the commencement of child adoption proceedings was unconstitutional as applied to an indigent person who could not afford even minimal costs. See Grissom v. Dade Cnty., 293 So.2d 59 (Fla.1974). However, the court specifically noted that the adoption of children implicated a fundamental human right. Therefore, the state could not restrict such a right where a party was indigent. Here, in contrast, no fundamental right is involved.
Further, section 57.011 does not set a condition precedent to filing a cause of action. Only the defendant may invoke its provisions. A defendant may also not opt for dismissal of the claim and instead rely on the alternative provided of looking to the plaintiff's attorney to cover the cost amount. See Lady Cyana Divers, Inc. v. Carvalho, 561 So.2d 612 (Fla. 3d DCA 1990) (concluding a non-resident plaintiff's counsel was liable for costs only up to $100, the amount of the cost bond, not the defendant's entire litigation costs). While the plaintiff claims that this is not an acceptable alternative remedy under the statute, that too has never been litigated. In this case, the attorneys for the plaintiffs have paid most court costs for their clients for twenty years.
The foregoing explains why we cannot say that the circuit court departed from the essential requirements of law or violated clearly established principles of law. Even the supreme court decisions appear to diverge when analyzing minimal fees or expenses involved in the litigation process. In a proper case brought to us on direct appeal, this issue would be ripe for our consideration. Our scope of review on second-tier certiorari is much narrower. Because there is no clearly established law to apply to this provision, we must decline jurisdiction.
LEVINE, J., concurs specially with opinion.
GROSS, C.J., dissents with opinion.
LEVINE, J., concurring specially.
I agree with the majority that we do not have jurisdiction for second-tier certiorari review based upon the specific facts before us. Our inquiry is "limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law." Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995).
The majority correctly asserts that our inquiry could end with the fact that the circuit court did not depart from clearly established precedent due to the fact there *705 is no controlling precedent that a bond requirement is unconstitutional when applied to non-resident, indigent litigants in a civil case. "Without such controlling precedent, we cannot conclude that either court violated a `clearly established principle of law.' At worst, both courts misapplied the correct law. Their error is not a matter of disobedience to the law . . . ." Stilson v. Allstate Ins. Co., 692 So.2d 979, 982 (Fla. 2d DCA 1997), cited with approval in Ivey v. Allstate Ins. Co., 774 So.2d 679, 682-83 (Fla.2000). Further, the "failure to apply the correct law, which is synonymous with departure from the essential requirements of the law, is something more than a simple legal error." State v. Belvin, 986 So.2d 516, 525 (Fla.2008) (citation omitted).
The trial court reasonably applied the applicable law, which has been undisturbed by prior precedent. While the issue of the $100 bond requirement's constitutionality is "certainly debatable, . . . there appears to be no case law on the matter that has been pointed out by either side or that has been disclosed by our own independent research." Wolf Creek Land Dev. Inc. v. Masterpiece Homes, Inc., 942 So.2d 995, 997 (Fla. 5th DCA 2006). Because the law pertaining to this bond requirement is not clearly established, a writ of certiorari is not available for second-tier review.
We need not consider whether the circuit court's order results in a "miscarriage of justice." Only if we found that the circuit court departed from the clearly established law would we continue our inquiry to determine if "such a departure was serious enough to result in a miscarriage of justice." Heggs, 658 So.2d at 531 (citation omitted).
I would conclude that since the circuit court applied the correct law, we need not determine if a miscarriage of justice would result. Thus, our inquiry should end after we have determined that the correct law was applied, and second-tier certiorari review should be denied.
Petitioners make a compelling case for the merits of their position. In our constitution, access to the courts is one of the fundamental rights in the Declaration of Rights. Art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."). It would be very easy to brush aside the requirements for second-tier certiorari jurisdiction to get to the merits of this action. But, we are constrained by the law and the limits of our jurisdiction. "There is a great temptation in a case like this one to announce a `miscarriage of justice' simply to provide precedent where precedent is needed." Stilson, 692 So.2d at 983. That temptation also exists in this case, but we do not have the authority to succumb to that temptation and exercise jurisdiction.
The contours of jurisdiction are not so malleable for us to vindicate the rights of petitioners. As Justice Cardozo stated, "Jurisdiction exists that rights may be maintained. Rights are not maintained that jurisdiction may exist." Berkovitz v. Arbib & Houlberg, 230 N.Y. 261, 130 N.E. 288, 291 (1921).
GROSS, C.J., dissenting.
I agree with Judge Cox's well-reasoned dissent below that section 57.011, Florida Statutes (2009) is unconstitutional. An unconstitutional statute that barricades the courthouse to a group of indigent defendants is a violation of a "clearly established law" that results in a miscarriage of justice under Allstate Insurance Co. v. Kaklamanos, 843 So.2d 885, 890 (Fla.2003). The majority too narrowly interprets the meaning of "clearly established law" for the purpose of certiorari review; the majority *706 makes much of the fact that the statute has not been challenged as unconstitutional in "170 years" or since the passage of the 1968 constitution. Yet this set of facts had not yet arisen to frame the constitutional issue. The majority's approach would prevent this court from considering a serious constitutional violation simply because the issue raised was one of first impression.
For the remainder of this dissent, I adopt Judge Cox's dissent from the circuit court:
Section 57.011 provides that non-resident plaintiffs shall file a bond of $100, conditioned to pay all costs which may be adjudged against them in the court in which the action is brought. Appellants argue that section 57.011 unconstitutionally restricts access to the courts for poor non-resident plaintiffs who cannot afford to post the cost bond. Appellants point out that the cost bond represents half or more of most of the Appellants' monthly income, and for some of them the cost bond is greater than their annual income.
Florida's constitution contains a specific access to court provision. Mitchell v. Moore, 786 So.2d 521, 526 (Fla.2001). Article I, Section 21 of the Florida Constitution provides: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Access to the courts is a fundamental right. Requiring a bond as a pre-condition for bringing an action does not necessarily violate the right of access to the court, but such bonds have been consistently disfavored by Florida courts.
In Kluger v. White, 281 So.2d 1 (Fla. 1973), the Florida Supreme Court set forth a two-prong test for determining compliance with the access to courts clause when legislation appears to restrict such right. The Supreme Court held that "the Legislature is without power to abolish the right of access to the courts without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting public necessity can be shown." Id. at 4. Under the "no alternative method" analysis, the Legislature may abolish a right of access if it has provided a reasonable alternative or commensurate benefit. See Mitchell, 786 So.2d at 527-28.
Section 57.011 does not provide the non-resident plaintiff with an alternative to filing the cost bond. In its order granting Appellee's motion to dismiss, the trial court appears to offer an alternative to filing the cost bond. The trial court instructed Appellants to either post the bond or proceed under section 57.082. Section 57.082, however, is not an option for Appellants because it does not apply to cost bonds.
In Psychiatric Associates v. Siegel, 610 So.2d 419 (Fla.1992), receded from on other grounds by Agency for Health Care Admin. v. Assoc. Indus. of Florida, Inc., 678 So.2d 1239 (Fla.1996), the Florida Supreme Court invalidated the statutes the[re] at issue because they did not provide for a waiver based on inability to pay, or some kind of exception or alternative for the indigent litigant. The Supreme Court held that the aforementioned statutes were unconstitutional because the bond requirement: 1) infringes on the plaintiff's fundamental right of access to the courts without providing an alternative remedy, commensurate benefit or a showing that no alternative method exists for meeting the overpowering public necessity that *707 begot the statutes; and 2) infringes o[n] the plaintiff's due process rights. Id. at 421.
In Psychiatric Associates, the Supreme Court explained:
Under the bond requirement statutes, all plaintiffs, regardless of the merits of their claims, must post a bond before proceeding with their action. This requirement will not necessarily discourage frivolous lawsuits of the rich, but only those lawsuits where the plaintiff is too poor to post the bond.

Id. at 425. Likewise, in this case, the bond requirement will not protect the resident defendants from non-resident plaintiffs; it will only prevent poor non-resident plaintiffs from having access to the court.
Further, in T.A. Enterprises, Inc. v. Olarte, Inc., 931 So.2d 1016 (Fla. 4th DCA 2006), the Fourth District Court of Appeal invalidated a statute that authorized courts to condition appellate review upon the manufacturer's payment of the consumer's attorney's fees. The court explained that the statute violated the access to courts provision of Article I, section 21 of the Florida Constitution. The court applied the test in Psychiatric Associates and found that the statute was unconstitutional because it failed to provide a manufacturer with an alternative remedy for appeal or a commensurate benefit. Id. at 1019; see also Shields v. Schuman, 964 So.2d 813 (Fla. 4th DCA 2007).
Because the Legislature has not shown that the method provided in the statu[t]e is the only method to protect resident defendants, and the statute does not provide an alternative remedy, the statute is unconstitutional.
NOTES
[1] The cost bond does not appear to have been raised as an issue in any of the prior cases. Either the plaintiffs in those cases filed the bond, their attorneys paid it, or the defendants never moved to dismiss the claims based upon the failure to file the bond. The plaintiff in the Lennon case which is still pending posted a bond; the Achord plaintiffs did not.
[2] Article I, section 21, entitled "Access to courts," provides: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."
[3] For an interesting historical analysis of the "open courts" clause in state constitutions, see Jonathan M. Hoffman, By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions, 74 Or. L.Rev. 1279 (1995).