678 So.2d 1239 (1996)
AGENCY FOR HEALTH CARE ADMINISTRATION, et al., Appellants/Cross-Appellees,
v.
ASSOCIATED INDUSTRIES OF FLORIDA, INC., et al., Appellees/Cross-Appellants.
No. 86213.
Supreme Court of Florida.
June 27, 1996.
Rehearing Denied September 6, 1996.
*1242 Robert A. Butterworth, Attorney General; Louis F. Hubener, James A. Peters, Charles McCoy and Eric J. Taylor, Assistant Attorneys General, Tallahassee; Parker D. Thomson and Carol A. Licko, Special Assistant Attorneys General, Miami; Dexter Douglass, General Counsel, Executive Office of the Governor, Tallahassee; P. Tim Howard of Howard & Associates, P.A., Tallahassee; Laurence H. Tribe, Special Counsel, Cambridge, Massachusetts; Jonathan Massey, Special Counsel, Washington, D.C.; Brian Koukoutchos, Special Counsel, Bedford, Massachusetts; Susan Nial of Ness, Motley, Loadholt, Richardson & Poole, Charleston, South Carolina; W.C. Gentry of Gentry & Phillips, Jacksonville; and Wayne Hogan of Brown, Terrell, Hogan, Ellis and McClamma, Jacksonville, for Appellants, Cross-Appellees.
Alan C. Sundberg, A. Broaddus Livingston, F. Townsend Hawkes and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee; Arthur J. England, Jr., Charles M. Auslander and Barry S. Richard of Greenberg, Traurig, Hoffman, Lipoff, Rose & Quentel, P.A., Tallahassee; Murray R. Garnick of Arnold & Porter, Washington, D.C.; and Jodi Chase with Associated Industries of Florida, Inc., Tallahassee, for Appellees, Cross-Appellants.
Jon C. Moyle, Jr., Thomas A. Sheehan, III and John R. Eubanks, Jr. of Moyle, Flanigan, Katz, Fitzgerald & Sheehan, P.A., West Palm Beach, for Good Samaritan and St. Mary's Hospitals, Amicus Curiae.
Jonathan S. Grout and Peter A. Lewis of Goldsmith & Grout, P.A., Tallahassee, for Florida Health Care Association, Inc., Amicus Curiae.
Robert C. McCurdy, Fort Myers, for Hospital Board of Directors of Lee County, d/b/a Lee Memorial Health System, Amicus Curiae.
*1243 Robert A. Ginsburg, Dade County Attorney and Sara A. Price, Assistant County Attorney, Miami, for Dade County Public Health Trust, Amicus Curiae.
Patrick G. Emmanuel and Karen O. Emmanuel of Emmanuel, Sheppard & Condon, Pensacola, for Sacred Heart Hospital of Pensacola, Amicus Curiae.
Harvey Granger, Jacksonville, for Baptist/St. Vincent's Health System, Inc., Amicus Curiae.
Tamara L. Trimble, Orlando, for Adventist Health System Sunbelt Healthcare Corporation, Amicus Curiae.
W. Spencer Mitchem of Beggs & Lane, Pensacola, for Baptist Hospital, Inc., Amicus Curiae.
James S. Eggert and Michael N. Brown of Allen, Dell, Frank & Trinkle, Tampa; and Frederick B. Karl, Tampa, for The Hillsborough County Hospital Authority, Amicus Curiae.
Ronald A. Harbert of Mateer, Harbert & Bates, P.A., Orlando, for Orlando Regional Healthcare System, Inc., Amicus Curiae.
Bruce S. Rogow of Bruce S. Rogow, P.A., Fort Lauderdale; and Beverly A. Pohl, Fort Lauderdale, for Wine and Spirits Distributors of Florida, Inc., Amicus Curiae.
Fletcher N. Baldwin, Jr., Gainesville, for National Federation of Independent Business and Florida Retail Federation, Inc., Amicus Curiae.
OVERTON, Justice.
We have for review a final order and declaratory judgment of the Second Judicial Circuit Court holding that significant portions of the Medicaid Third-Party Liability Act (Act)[1] are unconstitutional. The trial court also held that the Agency for Health Care Administration (Agency), the entity charged with enforcing that Act, was structured in violation of the Florida Constitution. The First District Court of Appeal certified that this judgment passed on a matter of great public importance that required immediate resolution by this Court. We accepted jurisdiction and heard oral argument. Art. V, § 3(b)(5), Fla. Const.
At issue is the State's ability to fashion a cause of action to recover health care expenditures made on behalf of Floridians and occasioned by the allegedly tortious conduct of others. At the outset, we note that the judicial branch must be cautious when evaluating the choices made by the legislative branch as to the appropriate funding for programs it has deemed important to the public welfare. We must avoid unnecessarily limiting the funding options available to the legislature when addressing today's policy problems. With this philosophy in mind, we now proceed.
In summary, we affirm the judgment in part and reverse the judgment in part. First, we find no legal infirmity in the structure of the Agency. We next, with two significant caveats, find the Act to be facially constitutional. We have no cause to invalidate, on its face, this legislative enactment aimed at the recoupment of Medicaid expenditures necessitated by the tortious conduct of others. The State concedes that it must demonstrate a defective product or negligent conduct, it must establish causation, and it must prove damages. Certainly the legislature may pursue these legitimate public-policy objectives. We do, however, limit our holding in the following two ways. First, a ruling of facial constitutionality does not preclude a later action challenging the manner in which the Act is applied. Indeed, some provisions of the Act may give rise to some serious constitutional issues at a later point in time. Second, while the essential aspects of the Act are facially constitutional, the following provisions must be modified or stricken to avoid offending the due process guarantees of the Florida Constitution: (1) the authority to pursue an action without identifying individual Medicaid recipients must be stricken; (2) the abolition of a statute-of-repose defense is ineffective to revive time-barred claims; and (3) the provision for combining the theories of market share liability and joint and several liability must be stricken even though either theory may be used separately.
*1244 We therefore strike the offensive provisions and leave the remainder of the Act intact.

Legislative and Case History
Importantly, the underlying basis for the government's recovery of health care costs expended for its citizens did not begin with the 1994 modifications to the Act that are at issue in this proceeding. Instead, the State has been legislatively authorized to pursue such reimbursement since Medicaid was enacted in 1968. See 42 U.S.C. § 1396a(a)(25)(1994). The State originally used federal law as a basis for its actions. In 1978, however, the legislature enacted statutory authority by which the State could pursue recovery of expenditures from third parties.[2] At that point, the State was given a traditional subrogation action.[3] Such an action allowed the State to occupy the same position as a Medicaid recipient in its pursuit of third-party resources. Then, in 1990, the existing statutory authority was substantially modified with the passage of major amendments to the Act.[4] The purpose of this modification was to strengthen the State's ability to recover funds expended for Medicaid costs. The following are the 1990 modifications relevant to this case:
(1) ... Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. Principles of common law and equity as to assignment, lien, and subrogation are to be abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources....
. . . .
(7) When the department provides, pays for, or becomes liable for medical care under [the Medicaid program], it shall have the following rights, as to which the department may assert independent principles of law, which shall nevertheless be construed together to provide the greatest recovery from third-party benefits:
. . . .
(12) The department may, as a matter of right, in order to enforce its rights under this section, institute, intervene in, or join any legal proceeding in its own name in one or more of the following capacities: individually, as subrogee of the recipient, as assignee of the recipient, or as lienholder of the collateral.
§ 409.2665, Fla. Stat. (Supp.1990).
The Act was again modified in 1994.[5] It is these amendments that are directly at issue in this case. The relevant provisions of the Act affected by the 1994 amendments, with those amendments identified by underlining or strike-through, read as follows:
409.910 Responsibility for payments on behalf of Medicaid-eligible persons when other parties are liable.
(1) It is the intent of the Legislature that Medicaid be the payer of last resort for medically necessary goods and services furnished to Medicaid recipients. All other sources of payment for medical care are primary to medical assistance provided by Medicaid. If benefits of a liable third party are available discovered or become available after medical assistance has been provided by Medicaid, it is the intent of the Legislature that Medicaid be repaid in full and prior to any other person, program, or entity. Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. Principles of common law and equity as to *1245 assignment, lien and subrogation, comparative negligence, assumption of risk, and all other affirmative defenses normally available to a liable third party, are to be abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources; such principles shall apply to a recipient's right to recovery against any third party, but shall not act to reduce the recovery of the agency pursuant to this section. The concept of joint and several liability applies to any recovery on the part of the agency. It is intended that if the resources of a liable third party become available at any time, the public treasury should not bear the burden of medical assistance to the extent of such resources. Common law theories of recovery shall be liberally construed to accomplish this intent.
(2) This section may be cited as the "Medicaid Third-Party Liability Act."
. . . .
(4) After the department has provided medical assistance under the Medicaid program, it shall seek recovery of reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits, but not in excess of the amount of medical assistance paid by Medicaid, as to:
. . . .
(b) Situations in which a third party is liable and the liability or benefits available are discovered either before or the department learns of the existance of a liable third party or in which third party benefits are discovered or become available after medical assistance has been provided by Medicaid.
. . . .
(6) When the department provides, pays for, or becomes liable for medical care under the Medicaid program, it has the following rights, as to which the department may assert independent principles of law, which shall nevertheless be construed together to provide the greatest recovery from third-party benefits:
The agency has a cause of action against a liable third party to recover the full amount of medical assistance provided by Medicaid, and such cause of action is independent of any rights or causes of action of the recipient.
. . . .
(9) In the event that medical assistance has been provided by Medicaid to more than one recipient, and the agency elects to seek recovery from liable third parties due to actions by the third parties or circumstances which involve common issues of fact or law, the agency may bring an action to recover sums paid to all such recipients in one proceeding. In any action brought under this subsection, the evidence code shall be liberally construed regarding the issues of causation and of aggregate damages. The issue of causation and damages in any such action may be proven by use of statistical analysis.
(a) In any action under this subsection wherein the number of recipients for which medical assistance has been provided by Medicaid is so large as to cause it to be impracticable to join or identify each claim, the agency shall not be required to so identify the individual recipients for which payment has been made, but rather can proceed to seek recovery based upon payments made on behalf of an entire class of recipients.
(b) In any action brought pursuant to this subsection wherein a third party is liable due to its manufacture, sale, or distribution of a product, the agency shall be allowed to proceed under a market share theory, provided that the products involved are substantially interchangeable among brands, and that substantially similar factual or legal issues would be involved in seeking recovery against each liable third party individually.
. . . .
(12) (h) Except as otherwise provided in this section, actions to enforce the rights of the department under this section shall be commenced within 5 years after the date a cause of action accrues, with the period running from the later of the date of discovery by the department of a case filed by a recipient or his legal representative, or of discovery of any judgment, award, or settlement *1246 contemplated in this section, or of the provision of medical assistance to a recipient. Each item of expense provided by the agency shall be considered to constitute a separate cause of action for purposes of this subsection. The defense of statute of repose shall not apply to any action brought under this section by the agency. or of discovery of facts giving rise to a cause of action under this section. Nothing in this paragraph affects or prevents a proceeding to enforce a lien during the existence of the lien as set forth in subparagraph (6)(c)9.
. . . .
(19) In cases of suspected criminal violations or fraudulent activity, on the part of any person including a liable third-party, the department is authorized to take any civil action permitted at law or equity to recover the greatest possible amount, including without limitation, treble damages under s. 772.73 F.S. In any action in which the recipient has no right to intervene, or does not exercise his right to intervene, any amounts recovered under this subsection shall be the property of the agency, and the recipient shall have no right or interest in such recovery.
Ch. 94-251, § 4, Laws of Fla. (emphasis added in part).
Subsequent to the 1994 modifications, Governor Lawton Chiles ordered the relevant executive branch officials to pursue the recovery of Medicaid expenditures from only the tobacco industry.[6] Representatives of certain industries affected by the governor's order (Associated Industries) filed this declaratory judgment action in the Circuit Court in Leon County. The lawsuit alleged that the 1994 amendments were unconstitutional and that the Agency was structured in violation of the Florida Constitution. The trial court ruled that: (1) the Agency was in fact structured in violation of the twenty-five department limitation in article IV, section 6, of the Florida Constitution; (2) the 1994 amendments encroached upon this Court's rule-making authority and thereby violated the separation-of-powers doctrine; (3) the 1994 amendments, because they created new substantive rights, could only be applied prospectively; and (4) the attempted elimination of the statute of repose defense could not revive time-barred claims. The State has appealed all of these rulings in this action.
Associated Industries has cross-appealed, raising three additional issues. It argues that: (1) the 1994 amendments violate article I, section 21, of the Florida Constitution by denying access to the courts; (2) the 1994 amendments encroach upon the separation-of-powers doctrine by prescribing relevancy and admissibility requirements for certain types of evidence; and (3) due process of law is offended by the 1994 amendments in violation of both the Florida and federal constitutions.
Numerous amicus briefs have been filed.[7]
Many of the challenges outlined above are redundant in the sense that they attack the same clauses of the Act with differing legal theories. We choose to organize our analysis by successively addressing the specific provisions of the Act that are challenged. We will evaluate each implicated clause and dispose of all legal challenges to that clause in the same portion of our opinion. Prior to reaching that discussion, though, it is necessary to address (1) the challenge to the Agency's constitutionality and (2) the nature and origin of the State's cause of action.

The Constitutionality of the Agency
Associated Industries argues that the Agency was created in violation of article IV, section 6, of the Florida Constitution because it resulted in the establishment of a twenty-sixth department. The trial court agreed. This holding would preclude the Agency from pursuing the causes of action authorized by the Act.
*1247 The relevant part of the Florida Constitution reads as follows:
All functions of the executive branch of state government shall be allotted among not more than twenty-five departments, exclusive of those specifically provided for or authorized in this constitution. The administration of each department, unless otherwise provided in this constitution, shall be placed by law under the direct supervision of the governor, the lieutenant governor, the governor and cabinet, a cabinet member, or an officer or board appointed by and serving at the pleasure of the governor....
Art. IV, § 6, Fla. Const.
This section of the constitution makes it abundantly clear that Florida shall have a limited executive branch. With the exception of those departments specifically authorized by the constitution, there cannot be more than twenty-five executive departments in existence at any time.
The legislature created the Agency in 1992. That act reads as follows:
Be It Enacted by the Legislature of the State of Florida:
Section 1. Effective July 1, 1992, section 20.42, Florida Statutes, is created to read:
20.42 Agency for Health Care Administration.There is created the Agency for Health Care Administration within the Department of Professional Regulation. The agency shall be a separate budget entity, and the director of the agency shall be the agency head for all purposes. The agency shall not be subject to control, supervision, or direction by the Department of Professional Regulation in any manner, including, but not limited to, personnel, purchasing, transactions involving real or personal property, and budgetary matters.
(1) DIRECTOR OF HEALTH CARE ADMINISTRATION.The head of the agency is the Director of Health Care Administration, who shall be appointed by the Governor. The director shall serve at the pleasure of and report to the Governor.
Ch. 92-33, § 1, at 241, Laws of Fla.
The trial court based its conclusion that this agency was "unconstitutionally structured in violation of the 25 department limit of Article IV, § 6 of the Florida Constitution" upon two assumptions: (1) that the Agency is a department; and (2) that twenty-five departments were in place prior to the Agency's creation. We disagree. As set out below, we conclude that the Agency was created as a valid agency within an existing department by the express language of the statute. Consequently, we need not determine the number of departments in existence in 1992.
This Court is deferential when reviewing a legislative determination as to the meaning of a constitutional provision. In Greater Loretta Improvement Ass'n v. State ex rel. Boone, 234 So.2d 665, 669 (Fla.1970), we stated: "[W]here a constitutional provision may well have either of several meanings, it is a fundamental rule of constitutional construction that, if the Legislature has by statute adopted one, its action in this respect is well-nigh, if not completely, controlling." This rule of construction is tempered by reason, and this Court will not give a constitutional provision an impossible or irrational construction simply to validate a given statute.[8]
Our role is to determine whether the legislature has adopted a rational construction of the constitutional limitation on executive departments. The legislature has set forth a policy concerning this issue as follows:
20.02 Declaration of policy.
. . . .
(2) Within constitutional limitations, the agencies which comprise the executive branch should be consolidated into a reasonable number of departments consistent with executive capacity to administer effectively at all levels. The agencies in the executive branch should be integrated into one of the departments of the executive branch to achieve maximum efficiency and *1248 effectiveness as intended by s. 6, Art. IV of the State Constitution.
. . . .
(5) Departments should be organized along functional or program lines.

§ 20.02, Fla. Stat. (1993)(emphasis added). Thus, the legislature has clearly stated its intention that departments should be organized with special attention given to keeping similar functional responsibilities within the same department.
The Agency was created as an independent agency within the Department of Professional Regulation. The Agency's director is appointed by, and reports directly to, the governor. We find that the placement of the Agency within the Department of Professional Regulation[9] was within the prerogative of the legislature. It cannot be disputed that the Agency's functional responsibilities include the regulation of health care activities in the state. The Agency does much more than initiate claims to recover Medicaid expenditures from third parties. Numerous amicus briefs filed by the hospital industry indicate a high level of concern regarding the trial court's adverse ruling as to the Agency. Those briefs explain the numerous Agency responsibilities in the regulation of hospitals and health-care providersresponsibilities certainly indicating that the Agency is a vital regulatory body within the health-care industry. The Department of Professional Regulation was responsible for many similar functions. Thus, the Agency's placement was a logical extension of the regulatory functions of the Department of Professional Regulation.
We find no merit in Associated Industries' claim that our functional analysis will render the disputed departmental limitation "meaningless." First, nothing changes as to the number of departments allowed in Florida. To accept Associated Industries' argument would mean that the legislature could not direct that an agency within a department must report directly to the governor. That result was neither intended nor required by the constitutional limitation on the number of departments. Our decision today does not permit the legislature to create a twenty-sixth department. Neither does the legislature gain the freedom to create numerous autonomous agencies. As we have stated, all agencies must be functionally related to the departments in which they are placed. We certainly are not sanctioning departments that resemble hodgepodges.[10] However, we do not believe that the constitutional departmental limitation prevents the legislature from placing an agency within a department, even though the agency itself reports directly to the governor, so long as that agency is functionally related to the department in which it is placed. Accordingly, we find no constitutional infirmity in the Agency's structure.

The Cause of Action
We now must address the nature of the State's cause of action. We recognize that many aspects of the Act have been challenged on constitutional grounds. However, in view of the numerous theories as to the origin and substance of the State's action, we choose to first define the contours of that action and then evaluate the Act against constitutional standards.
Associated Industries asserts that the State was limited to traditional notions of subrogation, assignment, and lien until the legislature amended the Act in 1994, and that, under these traditional theories, the State would be subject to the same legal obstacles that the Medicaid recipient would face in pursuing a claim. Associated Industries contends that it was the 1994 modifications that gave the State an independent cause of action and abrogated the affirmative defenses available to a third-party tortfeasor. We agree that it was the 1994 modifications, coupled with the 1990 amendments, that established an independent cause of action.
*1249 In 1978, the Florida Legislature clarified the State's rights in recovering third-party payments made to Medicaid recipients by enacting the following provision:
(b) A public assistance applicant or recipient shall inform the department of any rights he has to third-party payments for medical services. The department shall automatically be subrogated to any such rights the recipient has to third-party payments and shall recover to the fullest extent possible the amount of all medical assistance payments made on behalf of the recipient.
§ 409.266(3), Fla. Stat. (Supp.1978). This statutory language gave the State the authority to pursue third-party resources. However, the method of pursuit was limited to traditional subrogation means. In 1990, the legislature expanded the State's ability to pursue third-party resources. In amending the Act, the legislature recognized that the State's traditional subrogation rights were not sufficient. The amending language used in 1990 is expansive. For instance, a third party, the potential defendant in any action brought under the Act, was defined as
an individual, entity, or program, excluding Medicaid, that is, may be, could be, should be, or has been liable for all or part of the cost of medical services related to any medical assistance covered by Medicaid.
§ 409.2665(3)(p), Fla. Stat. (Supp.1990). Certainly this broad definition of third parties covers tortfeasors that caused a Medicaid recipient's health problems. The intent of the statute is clear that "Medicaid be the payer of last resort for medically necessary goods and services furnished to Medicaid recipients," and that, "if the resources of a liable third party become available at any time, the public treasury should not bear the burden of medical assistance to the extent of such resources." § 409.2665(1), Fla. Stat. (Supp.1990). Two other clauses are important. First, the legislature's 1990 language makes significant changes to the State's traditional subrogation action. It reads:
Principles of common law and equity as to assignment, lien, and subrogation are to be abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources.
§ 409.2665(1), Fla. Stat. (Supp.1990).
The second major legislative change in the 1990 Act appears in subsection (12) of section 409.2665, Florida Statutes (Supp.1990), and it states:
(12) The department may, as a matter of right, in order to enforce its rights under this section, institute, intervene in, or join any legal proceeding in its own name in one or more of the following capacities: individually, as subrogee of the recipient, as assignee of the recipient, or as lienholder of the collateral.
It is clear that the 1990 legislation, at the very least, moves the State to the front of the line vis-a-vis other innocent parties if any benefits become available, and these provisions give the State an expanded right to take priority over innocent parties in claiming "a pot of money once obtained."
Assuming that the content of the 1990 Act is open to numerous interpretations, the 1994 amendments clarify the State's cause of action definitively. After the modifications made in 1994, there can be no doubt that the Act is intended to create an independent cause of action to which traditional affirmative defenses do not apply. The major modifications made in 1994 are summarized below. First, the Act restated and expanded its language indicating that all affirmative defenses be abrogated to the extent necessary to ensure the State's recovery.[11] Second, the Act now relieves the State of any duty to identify the individual recipients of Medicaid payments.[12] Third, the statute of repose defense was abrogated in any action pursued by the Agency under the Act.[13] Fourth, the Act now clarifies that the State has the authority to pursue all of its claims in one proceeding.[14] Fifth, the State was given the authority to utilize theories of market share liability in conjunction with the theory *1250 of joint and several liability.[15] Sixth, the State was given the authority to use statistical analysis in proving causation and damages.[16] Indeed, these six modifications are the six substantive aspects of the Act challenged in this action.
Once again, there can be no argument after 1994 that the State's cause of action is derivative in the nature of a subrogation, assignment, or lien. Rather, it is a new, independent cause of action that requires the State to prove: (1) either negligence or a defective product; (2) causation; and (3) damages. We have now defined the cause of action as it exists after the 1994 amendments. We now address the constitutional challenges to each of the six specific 1994 amendments to the Act.[17]

Abrogation of Affirmative Defenses
As previously explained, the Act created, by legislation enacted in 1990 and 1994, a new cause of action by which the State may pursue liable third parties to recover Medicaid expenditures. This new cause of action was created with the intent that no affirmative defenses be available to defendants. Specifically, the following language from the Act is relevant here:
Principles of common law and equity as to assignment, lien, subrogation, comparative negligence, assumption of risk, and all other affirmative defenses normally available to a liable third party, are to be abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources; such principles shall apply to a recipient's right to recovery against any third party, but shall not act to reduce the recovery of the agency pursuant to this section.
§ 409.910(1), Fla. Stat. (1995). The abrogation of affirmative defenses has been challenged as being violative of the due process guarantees in both the federal and Florida [18] constitutions. It is also challenged as being violative of Florida's access-to-courts provision.[19] We reject both contentions insofar as we resolve the facial challenge to the Act. As with many legislative responses to modern policy problems, the vehicle chosen here to effectuate the State's policy goals has the potential to violate the due-process rights of Florida's citizens. We find, however, that any such problems will arise in the application of the Act's provisions. We are not currently faced with that issue. On its face, the provision allowing for the abrogation of affirmative defenses is constitutional under both the federal and Florida constitutions.
The United States Supreme Court has recognized that states necessarily have the ability to fashion new tort remedies to confront new situations. The ability of states to properly address the needs of their citizens is an important function of state government. Indeed, to rule otherwise would put the states in a straitjacket. Justice Marshall responded in the following way when confronted with the contention that California could not alter the common law of trespass:
Such an approach would freeze the common law as it has been constructed by the courts, perhaps at its 19th-century state of development. It would allow no room for change in response to changes in circumstance. The Due Process Clause does not require such a result.
PruneYard Shopping Center v. Robins, 447 U.S. 74, 94, 100 S.Ct. 2035, 2047, 64 L.Ed.2d 741 (1980)(Marshall, J., concurring).
Admittedly, the scope of due process jurisprudence has not been as well defined as *1251 other areas of American law. It has been written that "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). We approach the due process analysis in this case by way of analogy.
In 1919, the United States Supreme Court reviewed the Employers' Liability Law enacted by the State of Arizona. That law was challenged as being violative of employers' due process rights. The United States Supreme Court disagreed and affirmed. In a passage strikingly relevant to today's decision, it wrote:
Some of the arguments submitted to us assail the wisdom and policy of the act because of its novelty, because of its one-sided effect in depriving the employer of defenses while giving him (as is said) nothing in return, leaving the damages unlimited, and giving to the employee the option of several remedies, as tending not to obviate but to promote litigation, and as pregnant with danger to the industries of the state. With such considerations this court cannot concern itself. Novelty is not a constitutional objection, since under constitutional forms of government each state may have a legislative body endowed with authority to change the law. In what respects it shall be changed, and to what extent, is in the main confided to the several states; and it is to be presumed that their Legislatures, being chosen by the people, understand and correctly appreciate their needs. The states are left with a wide range of legislative discretion, notwithstanding the provisions of the Fourteenth Amendment; and their conclusions respecting the wisdom of their legislative acts are not reviewable by the courts.
Arizona Copper Co. v. Hammer, 250 U.S. 400, 419, 39 S.Ct. 553, 555, 63 L.Ed. 1058 (1919).
The Hammer ruling is appropriate today for two reasons. First, it demonstrates that states have the power to address contemporary problems by creating new causes of action. Such actions need not provide all of the defenses to which some potential defendants have become accustomed. Second, the Hammer decision reminds us that we must refrain from evaluating the wisdom of acts adopted by the legislative branch. See, e.g., University of Miami v. Echarte, 618 So.2d 189, 195 (Fla.), cert. denied, 510 U.S. 915, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993)(discussing deference to be given to legislative determinations of public policy and facts in construing the medical malpractice provisions attacked as violative of the due process and access-to-the-courts provisions of the Florida Constitution). At bottom, we can find no case from the United States Supreme Court that would prohibit the Florida Legislature from abolishing affirmative defenses in the circumstances addressed by the Act. We do not stop our analysis at this point, though. We now discuss the precedent from this Court demonstrating the propriety of our conclusion.
Associated Industries is essentially arguing that there is an absolute constitutional right to particular affirmative defenses once they have been created. We disagree. Certainly any abolition of an affirmative defense must satisfy the notions of fairness dictated by our due process jurisprudence. That recognition is quite different, however, from creating an absolute bar to the elimination of affirmative defenses. Florida's case law and existing statutes clearly demonstrate that such a bar has never existed.
First, we recall a striking example. In 1973, this Court eliminated the defense of contributory negligence, which prohibited a claimant from recovering any damages if the claimant was even one percent negligent. In its place, the Court adopted a pure form of comparative negligence, which allows a claimant to recover even though the claimant is ninety-nine percent negligent. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973).
Second, in Smith v. Department of Insurance, 507 So.2d 1080 (Fla.1987), we recognized, by denying constitutional attacks upon section 768.81, Florida Statutes (Supp.1986), id. at 1090, 1091, the legislature's authority to legislate in respect to comparative negligence by legislative modification of the common-law doctrine of joint and several liability. It is noteworthy that pursuant to section *1252 768.81, Florida Statutes (1995), the common-law doctrine of joint and several liability remains applicable to economic damages in instances in which a party's percentage of fault equals or exceeds that of a particular claimant. Thus, in respect to economic damages, we have recognized the legislature has the constitutional authority to statutorily authorize a qualifying plaintiff to secure a total recovery from a party who, though jointly liable, has very minimal comparative fault. This is significant because the Act, in abolishing affirmative defenses, is likewise setting forth, by statute, the basis for liability for purely economic damages and how liability for those damages is to be apportioned.
Third, we examine the invasion of privacy action created by this Court. In Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1945), this Court recognized and created a distinct right of privacy as part of our tort law that made particular conduct[20] actionable. In addressing the likely affirmative defenses that defendants might attempt to use, this Court ruled:
Neither the truth of the published matter, nor the entire absence of any malice or wrongful motive on the part of the writer or publisher, constitute any defense to such an action; nor does the plaintiff have to allege or prove any special or pecuniary damages.
Id. at 217, 20 So.2d at 252. Surely truth has historic roots as an affirmative defense. This Court, however, created a new cause of action and abolished truth as an affirmative defense thereto. There was no suggestion that such an act violated that Court's understanding of due process jurisprudence.
Fourth, in Florida's Pollutant Discharge Prevention and Control Act, chapter 376, Florida Statutes (1995), we find a similar limitation of long-established affirmative defenses. In proceedings under that chapter, the State need not prove negligence. The defenses are limited as follows:
The only defenses of a person alleged to be responsible for the discharge to an action for damages, costs, and expenses of cleanup, or abatement, shall be to plead and prove that the occurrence was solely the result of one of the following or any combination of the following:
(a) An act of war.
(b) An act of government, either state, federal, or municipal.
(c) An act of God, which means only an unforeseeable act exclusively occasioned by the violence of nature without interference of any human agency.
(d) An act or omission of a third party, without regard to whether any such act or omission was or was not negligent. § 376.12(6), Fla. Stat. (1995).
Fifth, we look at Waite v. Waite, 618 So.2d 1360, 1361 (Fla.1993), in which we abolished interspousal immunity as an absolute bar to liability. Previously, this was a traditional affirmative defense that had been recognized in this State to varying extents.[21] However, we held that "both public necessity and fundamental rights require[d] judicial abrogation of the doctrine." Id. at 1361. Once again, there was no suggestion that the abolition of that longstanding affirmative defense was violative of our due process jurisprudence.
Sixth, in West v. Caterpillar Tractor Company, 336 So.2d 80, 92 (Fla.1976), we adopted the doctrine of strict liability. At that time, we explicitly rejected any affirmative defenses based on a user's failure to discover a defect or a user's failure to guard against the possibility of a defect. Restated, we abolished both the longstanding affirmative *1253 defense of contributory negligence and its successor, comparative negligence. Such abolition did not offend our due process jurisprudence.
As a result, we are left to ask whether the Act is distinguishable, on its face, from these other situations in which affirmative defenses have been abolished. We find no such distinction. Therefore, we rule that the Act's abrogation of affirmative defenses is facially constitutional. We emphasize, however, that Florida courts will remain free to hear challenges to the actual application of such abrogation.
Next, we reject the claim that the abolition of affirmative defenses violates the access-to-courts provision found in article I, section 21, of the Florida Constitution.
In Kluger v. White, 281 So.2d 1, 4 (Fla. 1973), we held that.
where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such a right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
A question has arisen as to the scope of Kluger. Associated Industries strongly argues that Kluger protects both claims and defenses. It points to one sentence found in Psychiatric Associates v. Siegel, 610 So.2d 419 (Fla.1992). The Siegel Court wrote that "[t]he constitutional right of access to the courts sharply restricts the imposition of financial barriers to asserting claims or defenses in court." Id. at 424. Ignoring the inapposite nature of the context in which that statement was made, we can find no other cases from this Court that stand for the proposition that Kluger applies to affirmative defenses. Indeed, we look at Hoffman and Kluger together and find a telling insight as to the original (and current) meaning of our access-to-courts provision. Hoffman was decided on July 10, 1973. It abolished the longstanding affirmative defense of contributory negligence. Kluger was decided on July 11, 1973. It strains the limits of credibility to argue that Kluger prohibited the elimination of affirmative defenses just one day after this Court eliminated a longstanding affirmative defense.[22] Today we clarify that the constitutionality of the abolition of affirmative defenses is gauged by our due process jurisprudence. If applicable in the first place, we recede from any language in Siegel indicating that such abolition is governed by a Kluger analysis.
To recap, we hold that the provision abrogating affirmative defenses is facially constitutional. We do not address whether the provision will always survive a constitutional due process attack as to its application. It would be inappropriate to speculate as to such application. "When such application shall be made it will be time enough to pronounce upon it." J.W. Goldsmith, Jr.Grant Co. v. United States, 254 U.S. 505, 512, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921). Further, any speculation as to the application of this provision would be flawed because we have no record containing facts, evidence, or expert opinions. Having now addressed the most contentious provision, we move on to the other challenged clauses.

Identification of Recipients
As part of the 1994 amendments to the Act, the legislature enacted a paragraph that allows the State to proceed without identifying each individual recipient of Medicaid payments. The relevant paragraph in the statute reads as follows:

*1254 In any action under this subsection wherein the number of recipients for which medical assistance has been provided by Medicaid is so large as to cause it to be impracticable to join or identify each claim, the agency shall not be required to so identify the individual recipients for which payment has been made, but rather can proceed to seek recovery based upon payments made on behalf of an entire class of recipients.
§ 409.910(9)(a), Fla. Stat. (1995).
We find that this portion of the statute does in fact encroach upon due process guarantees of the Florida Constitution under article I, section 9. The State asserts that the challenged portion does not impact a defendant's ability to respond to a claim. We disagree. We can find no way in which this subsection would allow a defendant to challenge improper payments made to individual recipients. The paragraph clearly relieves the State of any obligation to reveal the identities of those recipients. Procedural due process, in our view, requires that a defendant be able to rebut a statutory presumption. In Straughn v. K & K Land Management, Inc., 326 So.2d 421, 424 (Fla.1976), we stated: "The test for the constitutionality of statutory presumptions is twofold. First, there must be a rational connection between the fact proved and the ultimate fact presumed. Second, there must be a right to rebut in a fair manner." (Emphasis added; citations omitted.) The current Act would prevent a defendant from demonstrating the impropriety of individual payments. Impropriety could be the result of fraud, misdiagnosis of the patient's condition, or unnecessary treatments. The defendant's inability to determine individual Medicaid recipients would also preclude that defendant from proving that its product was never used by the recipient. Hence, the statutory provision results in a conclusive presumption that every Medicaid payment is proper and necessitated by the defendant's product. It is illogical and unreasonable to call this a fair process. A defendant cannot rebut this presumption because there is no mechanism for determining to whom the payments were made. This type of conclusive presumption is violative of the due process provisions of our constitution, see, e.g., State Farm Mut. Auto. Ins. Co. v. Malmberg, 639 So.2d 615 (Fla.1994), and consequently the challenged paragraph must be stricken as unconstitutional.

Statute of Repose
The trial court held that the 1994 statutory amendment that abolishes the statute of repose is unconstitutional. The relevant portion of the 1994 amendment says that "[t]he defense of statute of repose shall not apply to any action brought under this section." § 409.910(12)(h), Fla. Stat. (1995). We have made it clear that the legislature cannot revive time-barred claims. In Wiley v. Roof, 641 So.2d 66, 68 (Fla.1994), we stated: "Once barred, the legislature cannot subsequently declare that we change our mind on this type of claim' and then resurrect it. Once an action is barred, a property right to be free from a claim has accrued." Id. at 68 (emphasis added). We find that Wiley controls. Therefore, the portion of the Act that abolishes the statute of repose defense is unconstitutional as violative of the due process clause of the Florida Constitution, but only as to claims which are already barred by the statute of repose. There is nothing to prevent the legislature from repealing a statute of repose. Therefore, the amendment can be constitutionally applied to claims not yet barred by the statute of repose when suit is filed.

Joinder of Claims and Liberal Construction
The act, in section 409.910(9), Florida Statutes (1995), provides for the joinder of multiple claims. It reads, in relevant part:
In the event that medical assistance has been provided by Medicaid to more than one recipient, and the agency elects to seek recovery from liable third parties due to actions by the third parties or circumstances which involve common issues of fact or law, the agency may bring an action to recover sums paid to all such recipients in one proceeding.
*1255 The trial court found that this provision infringed on the exclusive power of the judiciary to establish practice and procedure in Florida courts. We disagree under the circumstances of this case. As we have stated, the Act creates an independent cause of action. The challenged provision simply allows the State to aggregate its own claims arising from this new cause of action. The statutory joinder provision is consistent with court rules.[23]See Fla. R. Civ. P. 1.110(g). Judicial efficiency is promoted when similar legal issues can be ruled upon in one proceeding. Further, we note that in condemnation actions it is not unusual to join as many as fifty to one hundred parcels in one proceeding. Consequently, we find no constitutional infirmity with the challenged joinder provision.
Next, we analyze the statutory directives indicating the proper construction of certain portions of the Act. First, the Act directs that courts should construe all common law theories of recovery in a manner conducive to effectuating the legislature's intent.[24] Second, the Act also contains a directive instructing the courts to liberally construe the evidence code on issues of causation and damages.[25] These two provisions are challenged as being violative of our separation-of-powers provision found in article II, section 3, of the Florida Constitution. We cannot agree that the Florida Constitution prohibits these types of statutory directives. We find them to be only directory. In fact, the chapter on declaratory judgments under which the appellees brought this suit contains the following provision:
This chapter is declared to be substantive and remedial. Its purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed.
§ 86.101, Fla. Stat. (1995).
Declaratory judgment actions are well established in Florida jurisprudence. The directives regarding liberal construction have never been considered infirm in those actions. Likewise, we refuse to strike the aspirational language used in the Act.

Market-Share Liability and Joint and Several Liability
Associated Industries challenges the concept of market-share liability as enacted by the 1994 amendments to the Act. The market-share provision reads, in pertinent part, as follows:
In any action brought pursuant to this subsection wherein a third party is liable due to its manufacture, sale, or distribution of a product, the agency shall be allowed to proceed under a market share theory, provided that the products involved are substantially interchangeable among brands, and that substantially similar factual or legal issues would be involved in seeking recovery against each liable third party individually.
§ 409.910(9)(b), Fla. Stat. (1995).
In addition to this allowance for the use of market-share theory, the Act also instructs that all recoveries shall be joint and several.[26] We find no constitutional basis to prohibit the legislature from endorsing the use of a market-share theory for claims pursued under the Act. However, we find that it cannot be utilized with the concept of joint and several liability. In Conley v. Boyle Drug Co., 570 So.2d 275, 285 (Fla.1990), we expressly held: "The cornerstone of market share alternate liability is that if a defendant can establish its actual market share, it will not be liable under any circumstances for more than that percentage of the plaintiff's *1256 total injuries." (Quoting George v. Parke-Davis, 107 Wash.2d 584, 733 P.2d 507, 513 (1987)). The State's ability to pursue a claim against any defendant for all damages under the theory of joint and several liability would frustrate the express holding in Conley that a defendant should be able to limit its liability to its market share. We find that the theories of market-share liability and joint and several liability are fundamentally incompatible. Consequently, we find that the two theories cannot be used together, and that to do so would violate due process. On the other hand, we find that either theory may be used independently of the other and, consequently, we need not strike any statutory language as unconstitutional as to this point.

Statistical Evidence
The Act allows the State to use statistical analysis in presenting its case. It is claimed that such an enactment by the legislature violates the separation-of-powers doctrine of article II, section 3 of the Florida Constitution. We interpret this provision to operate within the constraints of our rules of procedure and rules of evidence. The State retains the burden of proving its case within the bounds of these rules. Consequently, we find no constitutional infirmity.

Accrual of the Cause of Action
There appears to be confusion surrounding the point in time at which the State's action accrues and, accordingly, we find it important to address the conduct that gives rise to a claim by the State. The trial court explicitly ruled that attention should be focused on the "conduct of potential defendants." In the context of a dangerous product, under such a focus, a cause of action would presumptively accrue upon the consummation of a sale. We disagree with this approach and find that a cause of action under the Act accrues when the State makes a Medicaid payment to a recipient. Consequently, the State may proceed independently with its new cause of action to recover all payments made after the effective date of the 1994 act, specifically July 1, 1994.[27] Of course, the State may also pursue claims accruing prior to that date under the 1978 traditional subrogation action.
We reject any claim of insufficient notice. It has been the policy of this State to pursue reimbursement for Medicaid expenses from available third-party resources since 1968. We find that notice is not an issue, particularly for claims accruing after 1978.

Applicability
The law is clear in this state that there can be no retroactive application of substantive law without a clear directive from the legislature. However, procedural provisions and modifications for the purpose of clarity are not so restricted. State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995); Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla.1994).
The 1994 amendments to the Act that have not been stricken qualify as substantive changes in the law. The State will have to file its claim under our current rules of procedure. Further, the current Act applies only to causes of action that accrued after July 1, 1994.

Conclusion
Providing medical coverage for those in need is a legislative function. How the costs of such coverage are financed is also, primarily, a legislative decision. Many options exist by which the legislature can fund such medical services. Three such options are as follows: (1) the use of general revenue collected from all taxpayers; (2) the creation of a new cause of action with which to recoup medical expenditures from those product manufacturers that may have wrongfully caused the recipients' health problems; or (3) the enactment of a tax to be assessed to those products that cause the health problems, with the proceeds dedicated to funding health care.[28]
*1257 This choice is for the legislative branch and not the judicial branch. The wisdom of any choice made by the legislature is not the issue, and we are obligated to construe an act as constitutional if at all possible.
Not all tort actions carry with them the same elements or affirmative defenses. The legislature must have the freedom to craft causes of action to meet society's changing needs. The United States Supreme Court has acknowledged this necessity and has tempered the legislative power of the states only with the rule against arbitrary or capricious actions. The State's action, as we have interpreted it, is neither arbitrary nor capricious. It is a rational response to a public need.
Finally, we present the following demonstration. Joint and several liability was established through the common law and later codified by the legislature. It allows a claimant to recover all damages from one of multiple defendants even though that particular defendant may be the least responsible defendant in the cause. Under the present section 768.81(3), Florida Statutes, a party who has more responsibility than the plaintiff may be made to pay all of the plaintiff's economic losses pursuant to the doctrine of joint and several liability. Hence, a party who is only one percent responsible for an accident, but who is jointly liable with a tortfeasor who is ninety-nine percent responsible, can be made to pay one hundred percent of the economic damages of a plaintiff who is zero percent at fault. We find that the Act simply recognizes the State as an entity analogous to the faultless plaintiff above. It allows the State to collect one hundred percent of the damages from a culpable third party even if another party might be considerably more culpable. The crucial distinction that must be highlighted is that the Act does not allow the recipient of Medicaid funds to benefit from a change in the basic scheme of joint and several liability. Instead, it merely treats the State as any other faultless plaintiff would already be treated under current Florida law. We can see no reason to find such a statutory scheme, with the exceptions herein stricken, facially unconstitutional. Accordingly, absent the clauses that we have stricken, the State may proceed in its efforts to recoup Medicaid expenditures from third-party tortfeasors under the Act. We stress one final time, however, that challenges to the Act's application may be properly addressed in appropriate trial courts.
Therefore, for the reasons expressed, the judgment entered by the trial court is affirmed in part and reversed in part.
It is so ordered.
KOGAN, C.J., and ANSTEAD, J., concur.
WELLS, J., concurs with an opinion.
GRIMES, J., concurs in part and dissents in part with an opinion, in which SHAW and HARDING, JJ., concur.
WELLS, Justice, concurring.
I agree with the majority's thorough and excellent analysis. I write to express my concern about the breadth of the statute as it pertains to the abrogating of affirmative defenses.
The statute, by its language, is not limited to tobacco companies or to products or to any potential tortfeasors. The statute engulfs "any liable third party." The trial court ruled that the Governor's limitation of the statute by executive order to the tobacco industry was not binding. This ruling was not appealed. I agree that executive order has no future binding effect on the State pursuing recovery of Medicaid costs pursuant to the statute.
Therefore, in the future, the State could attempt to pursue recoveries from any tortfeasors, including individuals involved in automobile accidents and those involved in any kind of accident which results in the expenditure by the State of Medicaid costs. I agree with the majority that we should not speculate about such applications.
However, I do believe that constitutional applications of the statute will require the developing of a record demonstrating a rational basis for the State being entitled to recover Medicaid costs in instances in which the party whose conduct contributed to the incurring of those costs is either completely *1258 barred from recovery or whose entitlement to recovery is reduced by comparative negligence. The State contends that there is a rational basis for an application of the statute to manufacturers and distributors of tobacco products. This contention can only be evaluated on the basis of record facts and expert opinions.
On the other hand, it is difficult for me to conceive of a rational basis for the application of the statute to automobile or other types of accidents or to causes of action arising out of the use of products which do not have the peculiar and substantial Medicaid cost potential which the State asserts tobacco products have.
GRIMES, Justice, concurring in part and dissenting in part.
"[H]istory reflects the traditional and common-sense notion that the Due Process Clause, like its forebear in the Magna Carta, see Corwin, The Doctrine of Due Process of Law Before the Civil War, 24 Harv. L.Rev. 366, 368 (1911), was `intended to secure the individual from the arbitrary exercise of the powers of government,' Hurtado v. California, 110 U.S. 516, 527 [4 S.Ct. 111, 117, 28 L.Ed. 232] (1884)." Daniels v. Williams, 474 U.S. 327 [106 S.Ct. 662, 88 L.Ed.2d 662] (1986).
Collins v. City of Harker Heights, 503 U.S. 115, 127 n. 10, 112 S.Ct. 1061, 1069 n. 10, 117 L.Ed.2d 261 (1992). By its 1994 amendments to the Medicaid Third-Party Liability Act, the State seeks to place a major portion of the cost of Medicaid upon third parties without regard to their constitutional rights. I cannot conclude that the end justifies the means.
I agree that the creation of the Agency for Health Care Administration did not violate the limitation on the number of departments of government set forth in article IV, section 6 of our constitution. Beyond that, I can accept very little of the majority's analysis of this far-reaching legislation.
The majority treats the statute as if it were limited to suits against tobacco companies. However, according to its plain language, the statute would apply to anyone who ever caused an injury to someone who was later treated for that injury by a Florida Medicaid provider. I know of no basis for the Governor's order limiting suits under this statute to those against tobacco companies. In any event, it could not possibly bind subsequent administrations. Furthermore, such an order flies directly in the face of Georgia Southern & Florida Railway Co. v. Seven-Up Bottling Co., 175 So.2d 39 (Fla.1965), in which this Court held that a comparative negligence statute pertaining only to suits against railroad companies violated the equal protection clause because at that time all other defendants were entitled to raise the defense of contributory negligence. Because the majority opinion addresses the various constitutional challenges under separate headings, I will endeavor to follow the same format.

Abrogation of Affirmative Defenses
The statute purports to eliminate "comparative negligence, assumption of risk, and all other affirmative defenses normally available to a liable third party." While the State can now prosecute its claim, the defendant can no longer defend against it. This provision is unconstitutional for several reasons.
In Kluger v. White, 281 So.2d 1 (Fla.1973), this Court examined whether the state legislature is empowered to abolish a common law or statutory right of access in the face of article I, section 21 of our constitution, which guarantees the right of access to the courts. We held that where the right was embodied in a statute or was part of the common law of the State when our new constitution was adopted in 1968, the legislature cannot abolish such a right unless (1) the legislature provides a reasonable alternative to protect the party whose right is being abrogated, or (2) the legislature can show there is an overpowering public necessity for abolition of the right and there is no alternative method of meeting that necessity. Id. at 4.
Contributory negligence (later changed to comparative negligence) was a common law defense in 1968 when our new constitution was adopted. Clearly, the statute does not meet the first test of Kluger because it abolishes comparative negligence and other affirmative *1259 defenses without providing an alternative remedy to the defendant.
The statute also fails the second test. Ordinarily, when the legislature has sought to limit access to the courts, it has taken great care to delineate why an overpowering public necessity requires it. E.g., University of Miami v. Echarte, 618 So.2d 189 (Fla.), cert. denied, 510 U.S. 915, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993). The legislature made no such effort in the enactment of the 1994 amendments. Clearly, federal law does not require the creation of any remedy to recoup Medicaid expenses, with the exception of the traditional remedies of subrogation and assignment. Moreover, no other state in the country has enacted a statute similar to the current statute. In any event, even if an overpowering public necessity for removing the defenses could be implied, there is an absence of any showing that there is no reasonable alternative for dealing with the Medicaid costs which are assumed to have been caused by tobacco. One obvious alternative would be to levy additional taxes upon the sale of tobacco in an amount sufficient to reimburse the State for expenses it perceives to have spent through Medicaid on tobacco-related illnesses. Yet, the legislature has not explained why this is not a viable alternative. Thus, the legislature's attempt to restrict access fails both tests of Kluger.
The majority dismisses consideration of the access clause of our constitution by the simple expedient of saying that it applies only to claims and not defenses. In so doing, it repudiates this Court's recent statement in Psychiatric Associates v. Siegel, 610 So.2d 419, 424 (Fla.1992), that article I, section 21 applies to both claims and defenses. Moreover, the majority opinion undercuts the holding of State ex rel. Pittman v. Stanjeski, 562 So.2d 673 (Fla.1990), in which we reasoned that if a statute were construed to permit automatic entry of a judgment for delinquent support monies without giving the defendant an opportunity to present defenses, it would violate the right of access to courts. Id. at 679. See also State Farm Mut. Auto. Ins. Co. v. Hassen, 650 So.2d 128 (Fla. 2d DCA 1995) (holding that right of access to courts applies to claims or defenses and declaring invalid a statute that impaired an insurance company's ability to defend itself by requiring advance payment of $100,000 before company could dispute liability), approved, 674 So.2d 106 (Fla.1996). Incomprehensibly, only plaintiffs and not defendants can now claim constitutional redress.
There are other compelling reasons why the abrogation of comparative negligence and other affirmative defenses with respect to the State's claims is unconstitutional. These may be best illustrated by example. Suppose John Smith bought an over-the-counter cold remedy manufactured by the Acme Drug Company. The package contained a warning that the cold remedy should not be taken by anyone suffering from diabetes, but the wording was arguably ambiguous. Despite having had diabetes all of his life, Smith takes the medicine and becomes seriously ill. As a result of his treatment by Dr. Green, he incurs $1000 in medical expenses. If Smith sued Acme alleging that the inadequate warning caused him to incur medical expenses as well as other damages, Acme would be entitled to raise a comparative negligence defense that the warning was clear enough to alert Smith to the danger, thereby defeating or at least diminishing Smith's recovery.
However, suppose Smith qualified for Medicaid and because Dr. Green was a qualified Medicaid provider, Smith's medical bill was not paid by Smith but by Florida Medicaid. Under these circumstances, the 1994 Medicaid Third-Party Liability Act authorizes the State to sue Acme and strips Acme of its ability to defend on grounds of comparative negligence. The distinction between the two examples, which permit the State's claim against Acme to succeed whereas Smith's may not, has nothing to do with the circumstances of how the illness was caused but is based only upon the fortuity that Smith's medical bills were later covered by Medicaid. A law that presumes to measure the liability of a party based on such a consideration is completely arbitrary and violates due process. Whether a claim is Medicaid-eligible has no more relevance in measuring whether a party may raise an affirmative defense than the question of *1260 whether Smith has brown hair or blond hair. Neither characteristic has any more bearing than the other as a rational basis for deciding whether Acme Drug Company may plead comparative negligence.
The same reasoning would apply to the case where driver A is injured in an automobile intersection collision with driver B. Suppose the accident occurred when driver A, who ran a red light, was hit by driver B, who was exceeding the speed limit at the time. In the normal case, driver A would sue for his damages, including medical expenses, and driver B would raise the defense of comparative negligence. However, if driver A happened to have his medical expenses paid by Medicaid, driver B would have no defense of comparative negligence against the State's suit to recover the medical expenses. To further illustrate the incongruity, if driver B were also injured and paid his own medical bills, his countersuit against driver A would be met by the defense of comparative negligence. The due process implications are overwhelming. As the United States Supreme Court said in Honda Motor Co. v. Oberg, 512 U.S. 415, ___, 114 S.Ct. 2331, 2339, 129 L.Ed.2d 336 (1994), the "abrogation of a well-established common law protection against arbitrary deprivations of property raises a presumption that its procedures violate the Due Process Clause."
From another perspective, the statute also constitutes a denial of equal protection of the law. If one defendant sells a product or becomes involved in an accident which causes injury to another, he or she would be entitled to raise comparative negligence or any other affirmative defense to the lawsuit. Yet, another similarly situated defendant would not be entitled to raise affirmative defenses to the claim for the injured party's medical expenses if they were paid by Medicaid. The two hypothetical defendants' actions are exactly the same except that one is denied the equal protection of the law because of a fortuity that had nothing to do with his or her conduct.
Finally, how can it be that only when the State makes a claim, there can be no affirmative defenses? The State has arrogated to itself a right that no other plaintiff can claim. The State's action in this respect is nothing more than a thinly veiled taking which violates the Fifth Amendment of the United States Constitution.
The majority's suggestion that the abolition of affirmative defenses is merely the equivalent of the modifications to other defenses that this Court has made from time to time is specious. Evolutionary modifications of specific defenses cannot be equated to the total abolition of affirmative defenses. Further, the majority overstates the holding of West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976). In adopting the doctrine of strict liability, we specifically held that the defense of comparative negligence could be interposed to demonstrate the injured person's failure to exercise ordinary due care. Id. at 90. The lack of ordinary due care is exactly the defense that Acme Drug Company would be precluded from raising in a suit by the State to recover Medicaid payments made to Mr. Smith.
Unquestionably, the State has a right of subrogation to recover medical expenses from the tortfeasor. However, in subrogation, the claimant stands in the shoes of the injured party. In a suit against tobacco companies, the injured party would be the smoker whose medical expenses have been paid by Medicaid. This legislation is an unconstitutional attempt to strip the tobacco companies of the defenses against smokers' claims which have been successful in the past because of the health warnings on tobacco advertising and packages.
I cannot see how the abrogation of affirmative defenses can be said to be facially constitutional, yet subject to an as-applied analysis. In particular, there can be no rational basis for making distinctions as to which defendants might be entitled to raise affirmative defenses. Any effort to do so would violate the right of equal protection as explained in Georgia Southern & Florida Railway Co. v. Seven-Up Bottling Co. as well as other constitutional protections. Moreover, upholding the facial constitutionality of most of the 1994 amendments but leaving open the possibility of as-applied attacks will spawn needless and expensive litigation.

*1261 Identification of Recipients

I agree with the majority's treatment of this issue.

Statute of Repose
I agree with the majority's treatment of this issue.

Joinder of Claims and Liberal Construction
Section 409.910(9), Florida Statutes (1995), reads in pertinent part:
In the event that medical assistance has been provided by Medicaid to more than one recipient, and the agency elects to seek recovery from liable third parties due to actions by the third parties or circumstances which involve common issues of fact or law, the agency may bring an action to recover sums paid to all such recipients in one proceeding.
I cannot agree that this provision does not infringe on the exclusive power of the judiciary to establish practice and procedure in Florida courts.
Article V, section 2(a) of our constitution provides that "[t]he supreme court shall adopt rules for the practice and procedure in all courts." We have consistently held that statutes are limited to substantive matters and that the legislature may not prescribe practice and procedure. Haven Fed. Sav. & Loan Ass'n v. Kirian, 579 So.2d 730 (Fla. 1991). To the extent that section 409.910(9) can be said to establish procedure for class actions, it clearly violates the decision in Avila South Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla.1977). However, the majority suggests that this section more properly deals with the joinder of causes of action and that its provisions are consistent with our court rules on joinder. I am not certain of this, but in any event, the fact that a statute may be consistent with our rules of procedure on joinder of causes of action is irrelevant. If it involves practice and procedure, the statute must be stricken even if the same practice and procedure is authorized by our rules.
Section 409.910(1), Florida Statutes (1995), provides that "[c]ommon law theories of recovery shall be liberally construed to accomplish" the intent of the statute. It is not unusual for statutes to specify that they should be liberally construed. However, this portion of the statute goes a giant step further in directing how common law theories of recovery should be construed. Thus, this portion of the statute also invades the province of the courts to establish practice and procedure. See In re Alkire's Estate, 144 Fla. 606, 623-25, 198 So. 475, 482-83 (1940) ("The weight to be given to evidence in judicial proceedings is not a matter for legislative regulation.... Statutes cannot direct or control the judicial judgment....").

Market-Share Liability and Joint and Several Liability
I agree with the majority that theories of market-share liability and joint and several liability cannot be used together. I see no reason why one theory or the other could not be used in a single suit, provided their use is consistent with established case law on the subjects. Thus, market-share liability would apply only where there was an inherent inability to identify the manufacturer of the product that caused the injury. Conley v. Boyle Drug Co., 570 So.2d 275 (Fla.1990). Likewise, defendants could only be held jointly and severally liable where their conduct meets the established criteria for joint and several liability. See Smith v. Department of Insurance, 507 So.2d 1080 (Fla.1987) (joint and several liability applicable where defendants act in concert or where they commit separate acts which combine to produce a single injury).

Statistical Evidence
Section 409.910(9), Florida Statutes (1995), also provides that "the issue of causation and damages in any such action may be proven by use of statistical analysis." In attempting to dictate the manner in which cases may be proven, this statute clearly impinges upon the court's authority to regulate practice and procedure. However, based upon the majority's interpretation that it does not change the standard for the admissibility of statistical evidence, it should make no difference.

*1262 Accrual of the Cause of Action

I agree with the majority's treatment of this issue.

Applicability
I agree with the majority's treatment of this issue.

Conclusion
It may well be that the use of tobacco has resulted in inordinate medical expenses for which the State has paid Medicaid. However, the sale of tobacco has not been declared illegal and its manufacturers are entitled to just as much constitutional protection as anyone else.
As indicated above, I concur with the majority that there is no constitutional infirmity in the Agency's structure and in striking the provision which eliminated the necessity of identifying individual recipients. I also agree with the majority's treatment of the statute of repose issue, the market-share and joint and several liability issue, the accrual of the cause of action issue, and the applicability of the law to causes of action accruing after July 1, 1994. I would strike as unconstitutional the provision abrogating affirmative defenses, the provision pertaining to joinder of claims and liberal construction, and the provision on statistical evidence.
I respectfully dissent.
SHAW and HARDING, JJ., concur.
NOTES
[1] § 409.910, Fla. Stat. (1995).
[2] Ch. 78-433, § 14, Laws of Fla.
[3] The 1978 enactment included the following provision:

(b) A public assistance applicant or recipient shall inform the department of any rights he has to third-party payments for medical services. The department shall automatically be subrogated to any such rights the recipient has to third-party payments and shall recover to the fullest extent possible the amount of all medical assistance payments made on behalf of the recipient.
§ 409.266(3), Fla. Stat. (Supp.1978).
[4] In 1990, the original subsection containing the statutory subrogation provision was repealed. Ch. 90-295, § 34, Laws of Fla. In its stead, a new section was enacted. Ch. 90-295, § 33, Laws of Florida.
[5] Ch. 94-251, § 4, Laws of Fla.
[6] Fla. Exec. Order No. 95-105 (Mar. 28, 1995).
[7] Amicus curiae briefs were filed by (1) National Federation of Independent Business and Florida Retail Federation, Inc.; (2) Hillsborough County Hospital Authority; (3) Good Samaritan and St. Mary's Hospitals; (4) Florida Health Care Association, Inc.; (5) Hospital Board of Directors of Lee County, d/b/a Lee Memorial Health System; (6) Dade County Public Health Trust; (7) Wine and Spirits Distributors of Florida, Inc.; and (8) Sacred Heart Hospital of Pensacola.
[8] See Holley v. Adams, 238 So.2d 401 (Fla.1970).
[9] As of July 1, 1993, the Department of Professional Regulation was merged with the Department of Business Regulation to create the Department of Business and Professional Regulation. Ch. 93-220, Laws of Fla.
[10] We note that, instead of the prophesied governmental expansion, the legislature has actually consolidated departments since 1992.
[11] § 409.910(1), Fla. Stat. (1995).
[12] § 409.910(9)(a), Fla. Stat. (1995).
[13] § 409.910(12)(h), Fla. Stat. (1995).
[14] § 409.910(9), Fla. Stat. (1995).
[15] § 409.910(1), (9)(b), Fla. Stat. (1995).
[16] § 409.910(9), Fla. Stat. (1995).
[17] We appreciate that many commentators have written expressing their views on these 1994 amendments. See Jonathan S. Massey, The Florida Tobacco Liability Law: Fairy Tale Objections to a Reasonable Solution to Florida's Medicaid Crisis, 46 U. Fla. L.Rev. 591 (1995); Richard N. Pearson, The Florida Medicaid Third-Party Liability Act, 46 U. Fla. L.Rev. 609 (1995); Scott Richardson, Attorney General's Warning: Legislation May Now Be Hazardous to Tobacco Companies' Health, 28 Akron L.Rev. 291 (1995); William W. Van Alstyne, Denying Due Process in the Florida Courts: A Commentary on the 1994 Medicaid Third-Party Liability Act of Florida, 46 U. Fla. L.Rev. 563 (1995).
[18] The due process clause of the Florida Constitution is found in article I, section 9.
[19] Art. I, § 21, Fla. Const.
[20] The four types of wrongful conduct that can all be remedied with resort to an invasion of privacy action are: (1) appropriationthe unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusionphysically or electronically intruding into one's private quarters; (3) public disclosure of private factsthe dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye publication of facts which place a person in a false light even though the facts themselves may not be defamatory. Forsberg v. Housing Auth. of Miami Beach, 455 So.2d 373, 376 (Fla.1984)(Overton, J., concurring).
[21] See Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988) (abrogating interspousal immunity in situations where no public policy reasons exist for its continuance).
[22] We find further support for our position in West. As noted, the Court adopted the theory of strict liability in tort. At the same time, it refused to acknowledge the longstanding defense of contributory negligence in situations where the user fails to discover a defect and where the user fails to guard against the possibility of a defect. It should come as no surprise that there is no mention of Kluger in West.
[23] Associated Industries places heavy reliance on Avila South Condominium Association v. Kappa Corporation, 347 So.2d 599 (Fla.1977). We find Avila to be inapposite. The Avila case addressed a statute that created a procedural vehicle for filing claims that was previously nonexistent. The provision at issue here simply traces the rules already created by this Court. In that the State is filing claims in its own name, actions proceeding under the Act are not in the nature of a class action.
[24] § 409.910(1), Fla. Stat. (1995).
[25] § 409.910(9), Fla. Stat. (1995).
[26] § 409.910(1), Fla. Stat. (1995).
[27] Ch. 94-251, § 7, Laws of Fla.
[28] See Richard N. Pearson, The Florida Medicaid Third-Party Liability Act, 46 U. Fla. L.Rev. 609, 631-634 (1995).